18

1  A   I was researching the continuum of force trying to
2      find specific information on it, which is what we
3      were trained in.
4  Q   Did you come up with any other documents?
5  A   There are a few articles on it, yes.
6  Q   Are any of them official Green Oak Township
7      documents?
8  A   They are written by various different authors, not
9      Green Oak Township documents, no.
10 Q   But before you were asked to do this research, you
11     had never seen this document?
12 A   I had not seen this document, but I am aware of the
13     continuum of force, though.
14         MR. OSETEK:   I object to the use of this
15     document.  If he wants to talk about the continuum
16     of force, my other objection is to the relevance of
17     that and the cumulative nature of that still
18     stands.
19         But I don't believe in the use of a
20     Department of Justice document.  It is a hearsay
21     document.  It has -- Sergeant Crowe has no, cannot
22     lay an appropriate foundation for the introduction
23     of this.
24         The fact that something gets printed off
25     the internet, unless it says on the title page, as

19

1      I am sure many of you have seen, the State of
2      Michigan, their Internet documents all say official
3      state document on the top.  That would then be
4      called a self-authenticating document.  But there
5      is no basis for the introduction of this into
6      evidence, so I ask it not be admitted.
7          MR. ST. CHARLES:  All right.
8      (Discussion held off the record.)
9          MR. ST. CHARLES:  In looking at this and
10     whether there is any relevance, obviously Section
11     24.275 Rules of Evidence under Administrative
12     Procedures, I think there allows an agency,
13     referenced an agency may admit and give probable
14     evidence.  And I think that is fairly broad and
15     allows us to utilize the evidence, you know, even
16     in this particular case.
17         I do see there is some relevance for this
18     document and getting to the bottom facts in this
19     case.  So I think -- I believe at this point I am
20     going to overrule the objection and allow the
21     evidence.
22 Q   (Continuing by MR. MUSKOVITZ):  Sergeant Crowe,
23     can you read the last paragraph of that page, under
24     the continuum of force?
25 A   Says, when the use of force is reasonable and

20

1      necessary, officers should to the extent possible
2      use an escalating scale of options and not employ
3      more forceful means unless it is determined that a
4      lower level of force would not be or has not been
5      adequate.  The levels of force that generally
6      should be included in an agencies continuum of
7      force include verbal commands, use of hands,
8      chemical agents, baton or other impact weapon,
9      canine, less than lethal projectiles and deadly
10     force.
11 Q   Thank you.
12         Are you familiar with the devices or
13     weapons that direct an electrical current or
14     impulse?
15 A   Yes.
16 Q   What are those -- are there common names given to
17     those?
18 A   One is a taser (ph); another is a stun gun.
19 Q   Do you have familiarity with those devices?
20 A   I am familiar with them, yes.
21 Q   Can you briefly explain each, including how it is
22     used and the effect on an individual?
23 A   They both have similar effects, so I will get into
24     that in a second.
25         A taser is a device, hand held device

21

1      which projects two electrodes on a wire which must
2      make contact with a person.  When it makes
3      contact, a circuit is closed and it transmits high
4      voltage electricity anywhere from 50,000 watts to
5      200,000 or 300,000 watts through a body.  The range
6      of the wire tends to be between 20 and 30 feet.
7      Anything beyond that will not reach.
8          A stun gun is a similar device held in
9      the hand, but requires direct physical contact
10     while being held against a person.  So it is a
11     range of an arm's length, maximum.
12 Q   Now on the taser you said there are wires.  Those
13     wires remain in the appliance itself and extend out
14     to an individual?
15 A   Yes.
16 Q   And what is the effect or impact on the individual
17     who has either been the subject of a taser or stun
18     gun?
19 A   Depending on the length of time the current is
20     passed, anywhere between, the full charge is up to
21     three seconds of electrical current being passed
22     through, anywhere from numbness to full three
23     second charge, you could, causes the body to lose
24     control, affects the neuro system, general muscle,
25     involuntary muscle contractions, person could lose

**22**

1   some consciousness, you are incapacitated,
2   incoherent, unable to control themselves.
3   Q   Where does this -- do you know where the stun gun
4       and taser appliances fall within the continuum of
5       force spectrum?
6   A   It would be up just less than, fall under the less
7       than lethal force, which would be just short of
8       deadly force.
9   Q   In the continuum of force document put out by the
10      Department of Justice, there is reference to less
11      than lethal projectiles. Is that where those would
12      fall?
13  A   Yes.
14  Q   Could you -- you indicated in this continuum of
15      force that the first item is verbal commands?
16  A   Yes.
17  Q   Some of this is pretty obvious, but we are here to
18      make a record. So I am going to ask you some of
19      these questions.
20          In the normal day-to-day policing of a
21      department and police officer, what is involved in
22      the, what is referred to as verbal commands?
23  A   Anywhere from turning your car off; let's see your
24      hands, take them out of your pocket; you are under
25      arrest, turnaround, put your hands behind your

**23**

1   back; you need to stop what you are doing, put that
2   down.
3   Q   And the next item under continuum of force is use
4       of hand.
5          How would you progress from a verbal
6       command to a use of hands, and what would use of
7       hands, what does that mean in policing?
8   A   The whole progression would be if you tell somebody
9       to do something to put something down or, for
10      example, tell them you are under arrest, turnaround
11      and put your hands behind your back and they say,
12      no, I am not, then you need to assist them. You
13      have to lay your hands on them, turn them around
14      and physically put them where you want them, take
15      them where you want them to be.
16          It can also get to the point where a
17      person made an attempt to escape on foot. We have
18      to reach out, grab them and pull them back.
19          After the techniques you would use, there
20      are various things, some called arm-bars, some
21      called take downs, depending on the amount of
22      resistance the person offers, physical resistance,
23      you may have to do anything from guide them up
24      against a car or wall to actually take him into
25      some sort of hold, arm-bar hold or take-down hold,

**24**

1   take them down to the ground and wrestle with him.
2   Q   What is an arm-bar hold?
3   A   Basically put him in an arm lock, twist their arm
4       in a position where you inflict pain and cause them
5       to comply with your request.
6   Q   And a take down is just --
7   A   You just get them onto the ground.
8          There are various different methods to
9       use, but you take them down to a position on the
10      ground where you are superior to them and you have
11      them under control and you maintain control.
12  Q   Was Larry Young trained in the tactics involving
13      use of hands?
14  A   Yes.
15  Q   Do you know when that occurred?
16  A   Every police officer going through the basic
17      academy gets defensive tactics and handcuffing and
18      arrest techniques and also was sent to in-service
19      training on that.
20  Q   Are you familiar with when Larry Young got injured
21      in 1992?
22  A   Yes.
23  Q   Do you know how that injury came about?
24  A   He was taking a class on defensive tactics, which
25      involved the various take downs and arm-bars and

**25**

1   hands-on training.
2   Q   And that is how the injury occurred?
3   A   That is my understanding.
4   Q   Now when you were being questioned by
5       Mr. Osetek, there was an issue whether or not the
6       department had policies.
7          I want you to look at the document we
8       marked as 17, the Green Oak Township Police
9       Department Non-Lethal Force Policy.
10         Are you familiar with that policy?
11  A   Yes.
12  Q   I would like to direct your attention to page one,
13      the first paragraph under the Roman number two, II,
14      and read that into the record.
15  A   It shall be the policy of this department to employ
16      the minimum amount of force, reasonable and
17      necessary, to overcome the resistance offered,
18      effect lawful arrest and/or accomplish the lawful
19      performance of duty in protecting the public.
20  Q   Does the policy address the use of hands?
21          Specifically, I would refer you to page
22      two under Defensive Tactics.
23          MR. ST. CHARLES:  Mr. Muskovitz, before
24      we go any farther --
25          MR. MUSKOVITZ:  I move for admission of

7 (Pages 22 to 25)

26

1   Exhibit No. 16 and 17.
2           MR. ST. CHARLES:  Mr. Osetek?
3           MR. OSETEK:  I have no problem with
4   Exhibit No. 17.  It is a department policy.  I
5   think that is clearly admissible.
6           I stand by my objection to 16.  I don't
7   think it has -- I don't think there is an
8   appropriate foundation for its admission.  And I
9   also don't think it is relevant to the case at
10  hand.
11          MR. ST. CHARLES:  As I indicated
12  earlier, I believe there is some relevance based on
13  the rule cited.
14          I note your objection, overrule the
15  objection, and we will admit Exhibit No. 16 as
16  marked.
17          And no objection to Exhibit No. 17?
18          MR. OSETEK:  No objection.
19          MR. ST. CHARLES:  We will admit
20  Exhibit 17 as marked.
21  Q   (Continuing by MR. MUSKOVITZ):  If you could read
22  the first paragraph under Roman numeral four, IV,
23  Defensive Tactics, into the record.
24  A   Such methods and/or tactics such as "arm-bars" and
25  various subduing and "come-along" holds commonly

27

1   taught in Michigan Law Enforcement Officer's
2   Training Council Approved Training and/or by the
3   Department may be used.
4           The Michigan Law Enforcement Officer's
5   Training Counsel is a former name of MCOLS.
6   Q   And if you can read the second paragraph into the
7   record.
8   A   Such fundamental tactics shall normally be used
9   prior to the use of approved non-lethal weapon.
10  And the officer shall be required to report the
11  specific circumstances that existed which compelled
12  the use of the non-lethal weapon.
13  Q   The arm-bars and the come-along holds, are those
14  similar to what you testified to regarding the use
15  of hands in your previous testimony?
16  A   Yes.
17  Q   Now in the policy that referred to -- the heading
18  is defensive tactics, do they actually involve
19  aggressive actions by a police officer?
20  A   Yes.
21  Q   Is the Green Oaks Township Police Department
22  non-lethal force policy consistent with the
23  Department of Justice continuum of force principles
24  you refer to in Exhibit 16?
25  A   Yes.

28

1   Q   You have been with the department how long?
2   A   Since 1975.
3   Q   Okay.  And how long have you been a sergeant?
4   A   Since 1982.
5   Q   Before that you were a police officer?
6   A   Yes.
7   Q   As a sergeant, you have also been assigned to the
8   road, have you?
9   A   Yes.
10  Q   And are there circumstances in which a police
11  officer, in which vigorous physical action is
12  required which does not involve a criminal matter
13  and therefore, use of a stun gun or taser would not
14  be called for?
15  A   Yes.
16  Q   Could you give some examples of that, please?
17  A   Traffic stops where people have gotten out and have
18  been vocal, shown aggression, crowded me.  And that
19  has not required the use of it.  I dealt with
20  intoxicated subjects.
21  Q   What I am -- that wasn't the essence of my
22  question.  Maybe it wasn't clear.
23          I am looking for instances, for example,
24  do officers have occasion where they may have to
25  rescue a citizen?

29

1   A   Yes.
2   Q   And could those occur when there has not been
3   criminal --
4           MR. OSETEK:  Objection, leading.
5           Could you rephrase that?
6           MR. MUSKOVITZ:  I don't think it was
7   leading, suggesting the answer.  It could have been
8   a yes or no answer.
9           I will rephrase it.
10  Q   (Continuing by MR. MUSKOVITZ):  Are there
11  circumstances in which physical action is required
12  of an officer where there is no traffic stop or
13  criminal matter involved but in the course of their
14  performing their duties, they are required to
15  perform some physical activity?
16  A   Yes.
17  Q   What would some examples of that be?
18  A   Assisting such things as paramedics carrying
19  injured people on cots, picking people up.  We go
20  to Centennial Farms, for example.  Often times
21  elderly people fall out of bed.  We have to pick
22  them up and help them back into bed, picking up
23  large items of property, evidence, often, many
24  times.
25  Q   Have you ever had to rescue anybody either in the

8 (Pages 26 to 29)

Esquire Deposition Services, LLC
(800) 866-5560

30

```
1      swimming pool, building or anything of that nature?
2   A  Recently I had to tear a windshield out of a car to
3      get a guy out it, yes.
4   Q  How did you end up doing that?
5   A  With an ax and ripping out the windshield.
6   Q  Have there been occasions when officers in the
7      department have had to use physical force to
8      prevent somebody from hurting themselves or
9      committing suicide?
10  A  Yes.
11  Q  Are there situations in which an officer would need
12     to engage in vigorous and aggressive actions before
13     they can assess what level of force is required, if
14     any?
15  A  Yes.
16  Q  What would some of those actions or activities
17     involve?
18  A  Possibly crowd control. You get to a fight. You
19     have to clear a group of people out of the way to
20     get to the scene to see what the fight is about,
21     who is fighting.
22        We have had to go on — well, just we
23     recently had to go through a thick woods, had to
24     clear woods out of the way to get into a scene and
25     incident. We needed to move large, you know, trees
```

31

```
1      and stumps out of the way.
2   Q  Have you ever had to force, have you or other
3      officers had to force your way into buildings or
4      structures?
5   A  We had to kick many doors, boot doors, shoulder in
6      the door, had to move obstacles going through
7      homes, yes.
8   Q  Are there situations in which an officer will need
9      to engage in vigorous and aggressive actions before
10     they can both assess what force, not only what
11     force is necessary, but if it is required who to
12     use it on?
13  A  Yes.
14  Q  What would be an example of that?
15  A  Well, explaining before, you go to — you can go to
16     a large fight which happens a number of times, you
17     go to a large fight. You have to figure out who is
18     fighting, if there is a mutual combatant, somebody
19     is being assaulted. If you see two people fighting
20     it does not necessarily mean both are aggressive.
21     One could be a passive victim defending
22     themselves. You have to understand who the parties
23     are, what their involvement is.
24  Q  In a situation like that, what would be the first
25     thing, what would be the first thing an officer
```

32

```
1      should attempt to do?
2   A  Separate the parties.
3         MR. ST. CHARLES:  If I can stop for a
4      second.
5         We need for the record to show trustee
6      Berg did arrive at 6:50.
7         MR. OSETEK:  Off the record.
8         MR. MUSKOVITZ:  Off the record.
9         (Discussion held off the record.)
10        MR. ST. CHARLES:  Back on the record.
11  Q  (Continuing by MR. MUSKOVITZ):  Are there
12     situations under the department policies where use
13     of hands would be called for, one of the techniques
14     you described, and the use of a stun gun or taser
15     would be considered excessive or unreasonable under
16     the circumstances?
17  A  Sure.
18  Q  Can you provide some examples, please?
19  A  As I was starting to allude to before, if you deal
20     with — go to a scene of anything, an investigation
21     or traffic stop where the person you may be talking
22     with may not be fully cooperative, I have had
23     instances where a person has disagreed with me,
24     wanted to argue with me, gotten in my face quite
25     close. I have been poked in the chest a few times
```

33

```
1      by people trying to make a point. I have been
2      pushed aside. None of those would justify use of a
3      stun gun, but definitely justify the use of some
4      sort of take down, come along physical force of
5      some kind, yes.
6   Q  Have you ever had occasion to come in contact with
7      an individual who has had too much to drink or was
8      drunk?
9   A  Absolutely.
10  Q  The issue with respect to the need to use some of
11     these hands-on techniques, do those come up in bar
12     fights?
13  A  Absolutely.
14  Q  Have you had that at accident scenes?
15  A  Yes.
16  Q  With excessive drinking and domestic violence
17     situations?
18  A  Yes.
19  Q  Have you had to use hands-on techniques in all
20     those situations?
21  A  Lots of times, yes.
22  Q  What about traffic stops, have you ever had to or
23     is there — could there be an occasion where an
24     officer would have to physically remove someone
25     from a car?
```

9 (Pages 30 to 33)

34

1  A  Yes.
2  Q  Could that be the passenger, driver or passenger?
3  A  Any party in the vehicle.
4  Q  If somebody is arrested and not allowed to drive,
5     do you have to transport them in a department
6     vehicle?
7        MR. OSETEK:  I object to the leading
8     nature of the questions.
9        Not that I don't think Mr. Muskovitz is
10    capable of testifying, I rather hear Sergeant Crowe
11    explain why he does what he does rather than being
12    asked questions that suggest what the answer is.
13    That is a leading question and I think it
14    is inappropriate, and I think we are kind of going
15    down that road.
16       MR. MUSKOVITZ:  I don't believe it is
17    leading. I will rephrase it. I don't believe they
18    are leading questions.
19       MR. ST. CHARLES:  If you could rephrase
20    it.
21  Q  (Continuing by MR. MUSKOVITZ):  Police officers in
22    the department are required as part of their job,
23    do they get involved in traffic stops?
24  A  Yes, we do.
25  Q  Have there ever been circumstances when you have,

35

1     you or your officers you supervise had to use
2     hands-on techniques with respect in a traffic stop?
3  A  Yes.
4  Q  And can you explain or give some examples of that?
5  A  It doesn't happen often on a simple traffic stop.
6     You never know when it is going to happen.
7        We have had people who have had warrants
8     for their arrest, you run them, their warrants.
9     You advise them they are under arrest and they do
10    not want to cooperate. They had to be removed from
11    the vehicles. There are instances people who
12    have refused to get out the car and I have had to
13    physically remove them from the vehicle.
14       It happens any number of times. You
15    don't know when it is going to happen.
16  Q  Would the use of a taser or stun gun in the typical
17    situation that you have faced in either confronting
18    someone who is intoxicated or the circumstances you
19    describe at a traffic stop, would that call for,
20    would the use of a taser or stun gun be appropriate
21    under those circumstances?
22  A  Not necessarily -- not any one I have been involved
23    with, I have seen an incident where a taser would
24    have been suitable.
25  Q  You indicated that or if you can just repeat for

36

1     the record, the distance for the use of the taser?
2  A  Tasers have the range of up to about 30 feet.
3  Q  Are there any problems that you are aware of with
4     respect to, generally with respect to the use of a
5     taser?
6  A  With the taser, as I stated, they project two
7     electrodes on the wire. As a result, you had to
8     aim it. You have to be accurate. If you -- If one
9     or both of the electrodes don't hit their mark,
10    it's useless. And both need to hit their mark in
11    order to close the circuit.
12       The greater the distance, the less likely
13    you are going to be as accurate and with anything
14    you need to aim, it is more effective up close than
15    it is at a greater range. Effective meaning your
16    likelihood of hitting a target is greater at a
17    closer range than at a greater range.
18  Q  Are there any concerns specific to the stun gun or
19    issues specific to the stun gun that you are aware
20    of?
21  A  The stun gun requires physical contact while
22    holding it, which means you have to be within an
23    arms reach of the person you are using it against.
24    Likewise, you are also within an arms reach of
25    them, which means they could possibly take it from

37

1     you, wrestle it away from you before you use it on
2     them and turn around and use it on you.
3  Q  Are you aware of or do you have any -- are there
4     any general issues or limitations with respect to
5     the use of these techniques that would be common to
6     both or issues with respect to both of them?
7  A  Well, they are mechanical devices which can
8     malfunction. They both require some general
9     maintenance. Make sure -- they are battery
10    operated, so if the batteries are weak or dead,
11    they are not going to work. They occupy a hand
12    which could be used otherwise. I would be fearful
13    if I had one in my hand, fearful of putting it down
14    to use both my hands and let it be available for
15    someone else to use. There just are too many, too
16    many things that can go wrong with it.
17  Q  When is lethal force permitted?
18  A  Lethal force is permitted to protect yourself or
19    somebody else from serious bodily injury or life
20    threatening injury.
21  Q  Okay. In those circumstances which a stun gun or
22    taser could not be used, or was not effective and
23    there wasn't a life-threatening event allowing for
24    lethal force, would an officer need to resort to
25    hands-on tactics at that point?

10 (Pages 34 to 37)

38

1  A  Yes.
2  Q  Do you believe an officer, either individual using
3     a stun gun or other officers with him or her or the
4     public would be at risk if the officer could not
5     use the hands-on techniques when called for?
6        MR. OSETEK:  Objection, foundation.
7  Q  If they were relying on a stun gun in lieu of
8     hands-on techniques and could not use a stun gun
9     under the circumstances, do you have a concern that
10    either the officer, other officers or public could
11    be at risk?
12       MR. MUSKOVITZ:  And I believe based on
13    this officer's 20-some years experience as a police
14    officer he is qualified to testify to that.
15       MR. OSETEK:  I object.
16       It calls for speculation.  He is talking
17    about a hypothetical situation, and it is not a
18    situation we are faced with.  And as a result, his
19    answer is by definition a guess.  And that is all
20    it is, is his guess.
21       He may have 26 years worth of experience,
22    but we haven't heard the proper foundation for him
23    to be qualified as an expert with regard to either
24    taser or stun gun equipment.  We have not heard
25    testimony about training he has had in using these

39

1     and in training others.
2        And as a result, I think he would be
3     speculating or guessing about the use in such
4     situations.
5        MR. MUSKOVITZ:  If I can respond.
6        MR. ST. CHARLES:  Okay.
7        MR. MUSKOVITZ:  I think the objection
8     misses the point.
9        I am not asking him about his expertise
10    or the question that would require him to provide
11    expertise about the use of stun guns.
12       My question was, if an individual were
13    relying on a stun gun in lieu of the use of
14    physical force in a situation where a stun gun was
15    not, could not be used and the officer, therefore,
16    was left without the ability to use the physical
17    force, whether that would create a risk for either
18    the officer, other officers or the public.
19       So my question presumed that stun guns
20    would not be used in a particular situation.
21       (Discussion held off the record.)
22       MR. ST. CHARLES:  Would you rephrase the
23    question without using the stun gun as an example?
24 Q  (Continuing by MR. MUSKOVITZ):  Do you have an
25    opinion about the, whether or not an officer who is

40

1     not a, who is performing police officer functions
2     and could not perform the hands-on techniques, if
3     an officer was on duty without using their hands-on
4     techniques, whether that could place that officer,
5     other officers or the public at risk?
6  A  Yes.
7  Q  And what is your opinion?
8  A  My opinion is if a person, an officer cannot take
9     part in a scuffle, physical fight, that the
10    situation may continue and even progress to a much
11    more serious occurrence which may eventually
12    require fatal force.
13 Q  If more force is used than is necessary under the
14    circumstances, do you have an opinion whether that
15    could place the department or individual officer at
16    risk?
17 A  Yes.
18 Q  And what would that risk be?
19 A  If an officer uses more force than is reasonable
20    and necessary to affect an arrest, that would open
21    the officer up to both criminal and civil
22    liability, open up the department to civil
23    liability as well.
24       MR. MUSKOVITZ:  Thank you.  I have no
25    other questions.

41

1        MR. ST. CHARLES:  Before we go to cross.
2     I have one Board member who would like to ask a
3     question.
4        Any objection?
5        MR. OSETEK:  No objection.
6        MR. MUSKOVITZ:  No objection.
7        MR. ST. CHARLES:  Mr. Sedlak.
8        MR. SEDLAK:  Does the taser require skin
9     contact to be effective or does it have to
10    penetrate the clothes?
11       THE WITNESS:  It is my understanding it
12    has to make contact with skin because that is where
13    the nerves, it affects the nerve endings,
14    neurological system.  Without contacting the skin,
15    you have no connection to the neurological system.
16       MR. SEDLAK:  Thank you.
17       MR. ST. CHARLES:  Cross.
18       EXAMINATION
19 BY MR. OSETEK:
20 Q  Sergeant Crowe, are you familiar with the Michigan
21    Veterans Preference Act?
22 A  I know of it.
23 Q  Have you read it?
24 A  No.
25 Q  Are you familiar with the Americans With Disability

11 (Pages 38 to 41)

42

1    Act?
2  A  I am familiar with it. I have not read it.
3  Q  Have you ever been on light duty?
4  A  No. It has not been termed -- I take that back.
5     Yes, I have.
6  Q  When were you on light duty?
7  A  19 -- about 1986, I think, maybe.
8  Q  And what was that for?
9  A  Sprained ankle I believe it was at that time.
10 Q  Anytime other than 1986?
11 A  No, not that I can recall.
12 Q  Have you had any surgery in your lifetime?
13 A  Yes.
14 Q  While you have been on the force?
15 A  Yes.
16 Q  And what surgeries have you had?
17 A  I had a ruptured biceps tendon repaired, and I have
18    had both my hips replaced.
19 Q  Were the hip replacements on one occasion or did
20    you do two separate ones?
21 A  They didn't do both at the same time. They were
22    about 8 weeks apart.
23 Q  Did you work during that eight-week period?
24 A  Yes.
25 Q  Did you do your regular duties?

43

1  A  I did what I was assigned to do.
2  Q  Did you understand my question?
3  A  Depends on what you term as regular duties.
4  Q  Did you do the same duties you had before your
5     surgery?
6  A  Yeah, I did some of the same duties, yes.
7  Q  You did some of the same duties?
8  A  Right.
9  Q  You did some other duties?
10 A  I was in the office, working in the office during
11    the time.
12 Q  You were assigned to light-duty work?
13 A  I was assigned to the office.
14 Q  Would you call that light-duty work?
15 A  My doctor gave me no restrictions.
16 Q  I didn't ask you what your doctor did.
17    Would you call that light-duty work?
18 A  I was not able to do street work.
19 Q  And the department accommodated you?
20 A  Well, because I was given authorization to return
21    to full work, yes.
22 Q  The department accommodated you because you were
23    not able to do street work, correct?
24 A  I was assigned to the office, yes.
25 Q  All right. Any other times you did not do street

44

1     work?
2  A  When?
3  Q  In your career at the, with the township.
4  A  Other than what I mentioned to you, not that I am
5     aware of.
6  Q  Were you on light-duty work for approximately nine
7     months?
8  A  It was not light duty.
9  Q  Well, office work or non-patrol work?
10 A  Yes.
11 Q  When was that?
12 A  From March of 1994 through about November 1, 1994.
13 Q  And other officers in the department have at
14    various times been on light duty?
15 A  I believe they have, yes.
16 Q  And you testified to that fact before, haven't you?
17 A  I may have.
18 Q  Now in talking about the taser, did you indicate
19    what the wattage of a taser was?
20 A  The wattage?
21 Q  Yes.
22 A  No, I don't believe I did.
23 Q  Didn't you say something about it ranged from
24    $50,000 to 200,000 miles?
25 A  Volts.

45

1  Q  Big difference. I heard that and I said wait a
2     minute, nobody want those things.
3        Now you as an officer, when you are faced
4     with a situation, you have to assess the level of
5     force necessary, don't you?
6  A  Yes.
7  Q  And every officer has to do that when they are
8     faced with that situation?
9  A  Yes.
10 Q  Have you ever pulled your gun?
11 A  Yes.
12 Q  Have you ever used it?
13 A  Yes.
14 Q  Have you ever hit anybody?
15 A  No.
16 Q  But you decided that was the appropriate level of
17    force?
18 A  Yes.
19 Q  You indicated that one of the drawbacks you saw to
20    the taser, you would be afraid of putting it down?
21 A  Well, if I would put my weapon down, I would be
22    fearful of that as well.
23 Q  Right. It is the same as a gun in that sense where
24    you wouldn't just lay it on the ground and walk
25    away?

12 (Pages 42 to 45)

46

1  A  No.
2  Q  They come with holsters, don't they?
3  A  I believe you can get them, yes.
4  Q  And like a gun, it is a mechanical device?
5  A  Yes.
6  Q  It needs to be maintained?
7  A  Yes.
8  Q  And every one in this township to your knowledge
9     maintains their weapons?
10 A  Yes.
11        MR. OSETEK:  I have nothing further of
12    this witness.
13        MR. MUSKOVITZ:  I have no other
14    questions.
15        MR. ST. CHARLES:  No other questions.
16    Mr. Muskovitz, do you have any other
17    witnesses?
18        MR. MUSKOVITZ:  At this time, as I
19    indicated before, I do want to recall, I ask
20    permission to recall Chief Brookins.
21        Before making the argument as to why I
22    think you should be allowed to do that, I would say
23    if, in fact, Mr. Osetek is going to call witnesses,
24    the likelihood is there is some additional rebuttal
25    testimony based upon whoever testifies, and I could

47

1  defer calling Chief Brookins at this time with the
2  understanding I would make that, call him as a
3  rebuttal witness.
4        So I would defer to Mr. Osetek.  If he is
5  going to call a witness or witnesses, then I would
6  not call Chief Brookins at this time.  So I would
7  ask, I guess, that would be my question if he is
8  going to call somebody, I hold off.  If is he not,
9  I would ask to recall Chief Brookins.
10        MR. ST. CHARLES:  Mr. Osetek?
11        MR. OSETEK:  It is my understanding the
12    Township has the burden of going forward, and they
13    need to meet that burden.  And when they are done
14    with that, we will make a determination as to the
15    defense or the response that we will put forth.
16        MR. ST. CHARLES:  Are you, in essence,
17    are you going to provide a witness or call any
18    witness?
19        MR. OSETEK:  I am going to object to any
20    recalling of Chief Brookins.
21        And if they are then finished with their
22    case, I would ask for a short adjournment so I can
23    consult with my client as to how we will proceed.
24        MR. ST. CHARLES:  But are you objecting
25    to the recalling of Chief Brookins, period, or for

48

1  rebuttal?
2        It would be for rebuttal?
3        MR. OSETEK:  It would be for any
4  purpose.
5        MR. MUSKOVITZ:  I guess he is,
6  basically, is putting the ball back in my court,
7  and that is fine.
8        I am asking, will I be allowed to recall
9  Chief Brookins.  And I believe the Board has the
10    discretion to do this.  We are not in a civil
11    court, but even under the Michigan Rules of
12    Evidence, a judge has the discretion to, I think,
13    under Rule 611, the court shall exercise reasonable
14    control of the mode and order of interrogating
15    witnesses and presenting evidence so as to make the
16    interrogation and presentation effective for the
17    ascertainment of the truth.
18        And I believe, basically, we are asking
19    in essence reopening of the proofs.  And I ask to
20    do that.
21        Also, I would note that this is not in a
22    court of law, and I believe it is probably not even
23    subject to the Administrative Procedures Act.  Even
24    if it were, I think the rules of evidence are more
25    laxed and this Board has the discretion for

49

1  purposes of hearing relevant testimony.
2        MR. ST. CHARLES:  Again, I think,
3  though, even though we are in a court of law, we
4  have a broad act.  Again, 24.275 of Administrative
5  Procedures Act does give us the broad latitude in
6  some respects.  So that makes it harder on this end
7  to weigh these things.
8        I do believe right here we have the
9  latitude to be somewhat flexible.  So I am going to
10    overrule the objection and allow the recalling of
11    Chief Brookins.
12        MR. MUSKOVITZ:  If we can take short
13    recess then.
14        MR. ST. CHARLES:  I appreciate it.
15        A standard recess for a few minutes.
16        (Brief recess.)
17        MR. ST. CHARLES:  We are back on the
18    record.
19        Chief Brookins, you understand you are
20    still under oath?
21        WITNESS:  Yes.
22            *   *   *
23    C H I E F   R O B E R T   B R O O K I N S
24    was called as a witness, and after having been
25    sworn, was examined and testified as follows:

13 (Pages 46 to 49)

50

1      EXAMINATION
2      BY MR. MUSKOVITZ:
3   Q   Chief Brookins, the Veterans Preference Act
4      provides age, loss of limb or other physical
5      impairment, which does not, in fact, incapacitate,
6      shall not be deemed to disqualify a discharged
7      veteran from employment.
8          In cross-examination you were asked if
9      Larry Young was incapacitated, and you answered in
10     the negative. In answering that question, what did
11     you believe at that time the term "incapacitated"
12     meant?
13         MR. OSETEK:  Objection, it calls for --
14         I withdraw my objection.
15  A   Thought that he had been mobile with a wheelchair
16     or set of crutches.
17  Q   The Veterans Preference Act also lists incompetence
18     as a grounds to terminating a Veteran.
19         On cross-examination you were asked if
20     you believe Larry Young was incompetent and you
21     answered in the negative.
22         What was the basis for your answer and
23     what did you believe the term "incompetent" meant?
24         MR. OSETEK:  I object to this line of
25     questioning for precisely the reason why I objected

51

1      to reopening the proofs.
2          Chief Brookins was on the stand for about
3      three hours two weeks ago. And Mr. Muskovitz had
4      every opportunity to ask him every question,
5      including on redirect after he answered my
6      questions on cross-examination.
7          And clearly what has happened in the two
8      weeks is these two have sat down, Chief Brookins
9      has been sandpapered, and now he is changing all of
10     his answers.
11         Keep in mind that when he answered
12     before, it was under oath. He had ample
13     opportunity to answer every question that was
14     asked. And what they are doing now is they are
15     just changing the testimony, changing the
16     testimony. It is nothing more than that.
17         This is no new information. This is
18     information that was gone over on direct, on cross,
19     on redirect and on re-cross. And so what they are
20     trying to do is change a whole host of answers that
21     we all heard under oath. And that is improper.
22     And I would object to that.
23         If there was additional information that
24     was not gone into, that is appropriate for
25     reopening proofs, but not to go back and take

52

1      another bite of the same apple. That one has
2      already passed. It is time for new information.
3          And I would object to any further
4      questions along this line where they are trying to
5      put new words into what he said before.
6          MR. MUSKOVITZ:  Well, I think the
7      purpose of the question is, and he did testify on a
8      question or cross-examination that he had read or
9      was familiar with the statue. And at that time he
10     said he was not.
11         He was asked basically to give his
12     opinion regarding some of the termination or
13     terminology in the statute. I have not asked him
14     questions about the basis for his conclusion as to
15     whether or not he thought Larry Young could perform
16     certain job duties. And it is not my intent to ask
17     him that.
18         In fact, his testimony in that deposition
19     is consistent with someone who would not be
20     competent. And I believe there is a need to
21     clarify for the record what he meant by that.
22         MR. OSETEK:  The record needs no
23     clarification. This is embellishment, changing,
24     not clarification.
25         His answers were very clear, very firm.

53

1      He didn't show that he didn't understand anything;
2      he didn't say I don't know what you mean. He
3      answered very direct questions with very direct
4      answers. And all he is doing now is changing his
5      testimony.
6          I would ask that the prior questions be
7      stricken and that there be an instruction that if
8      there are new issues to go into, fine; if not, they
9      should rest their case and we can move ahead with
10     our case.
11         MR. ST. CHARLES:  Give me a minute.
12         (Discussion held off the record.)
13         MR. ST. CHARLES:  And you can
14     appreciate, since I am not a legal scholar, none of
15     us on the Board are, we need some guidance. At
16     this point, I am going to sustain the objection.
17     And I would ask that you, direct you to your line
18     of questioning to focus in a different avenue.
19         MR. MUSKOVITZ:  Well, my next question
20     would be, Chief, do you mind standing down?
21     I have no other questions.
22         MR. ST. CHARLES:  With that, do you have
23     any other witnesses?
24         MR. MUSKOVITZ:  No, I do not.
25         MR. OSETEK:  Mr. Osetek, do you have any

14 (Pages 50 to 53)

54

1   witnesses at this time?
2         MR. OSETEK:  Can we confer for a
3   minute? Nobody has to leave.
4         (Discussion held off the record.)
5         (Brief recess.)
6         MR. ST. CHARLES:  Okay, gentlemen.
7   Mr. Osetek?
8         MR. OSETEK:  We are satisfied with the
9   proofs.
10        MR. ST. CHARLES:  You are satisfied with
11  the proofs. So there is no other testimony at this
12  time?
13        MR. OSETEK:  No additional testimony.
14        MR. ST. CHARLES:  Then we are finished
15  with this portion.
16        At this time, the way I would like to
17  proceed, I would like to take this under
18  advisement.
19        What I would like to do and what I would
20  direct is that we will provide both parties, all
21  parties involved, each Board member with a
22  transcript of this proceeding so everybody has a
23  transcript. Also, with that I will make available
24  to both parties copies of the videotapes if you
25  wish.

55

1         What I would request, too, or direct is
2   that both sides prepare the Township Board with a
3   brief of these proceedings delivered to the
4   township clerk.  Now, between both sides,
5         What would be a reasonable time to supply
6   a brief?
7         MR. MUSKOVITZ:  If I may, generally what
8   happens is we determine an amount of time after the
9   receipt of the second transcript. You already have
10  the first, don't you?
11        MR. ST. CHARLES:  I would assume —
12  let's assume we could have the transcript in ten
13  days, I hope.
14        MR. OSETEK:  You can have it tomorrow if
15  you are willing to pay for it.
16        Let me address a matter of economics.
17  And maybe it is not fair for the court reporter to
18  listen to this.
19        I have already paid for one transcript.
20  I assume Mr. Muskovitz has paid for one
21  transcript.
22        There should be an economically efficient
23  way to do this. And maybe I leave that up to Board
24  to deal with the court reporter on that.
25        I would agree with Mr. Muskovitz,

56

1   normally we would have a period of time after
2   receipt of the final, whether it was transcript or
3   videotape. And we would certainly be able to work
4   on a schedule that presumably would work with you
5   all.
6         MR. ST. CHARLES:  And that is where I
7   was going to try to find — I don't know — I don't
8   want to say you have to have a brief in 40 days or
9   30 days. I don't know.
10        What would you gentlemen think would be
11  appropriate?
12        MR. MUSKOVITZ:  What if we said x-amount
13  of days, whether it is three weeks after receipt of
14  the transcript, does that work for your schedule?
15        MR. OSETEK:  That does not work for my
16  schedule.
17        MR. MUSKOVITZ:  Then I would insist on
18  that.
19        What works for your schedule?
20        MR. ST. CHARLES:  I already heard I am
21  reasonable at the prior meeting. We are trying to
22  be reasonable.
23        I want to come up with a time frame that
24  works for both sides and also allows the Board the
25  flexibility to read the transcript and briefs,

57

1   too. So we need time after the briefs to go to the
2   next step.
3         MR. OSETEK:  I know I have two briefs
4   due by September 9th, and have I a trial that
5   starts on September 9th.
6         After that my schedule is fairly open,
7   so —
8         MR. ST. CHARLES:  If we said six weeks
9   after the transcript?
10        MR. OSETEK:  That would be fine.
11        And if any of us have a problem, we can
12  confer and say —
13        MR. ST. CHARLES:  Certainly if it takes
14  more time, that something comes up we understand.
15        We are trying to be flexible. If we put
16  a time limit, you know, try to strive for six weeks
17  after the transcripts and/or videotapes are
18  delivered to either side, then I think that is a
19  milestone.
20        MR. SEDLAK:  Find out if someone wants
21  the videotapes.
22        MR. ST. CHARLES:  Do you want copy of
23  video tapes?
24        MR. MUSKOVITZ:  I do not.
25        MR. OSETEK:  I would.

15 (Pages 54 to 57)

58

1    MR. ST. CHARLES:  We will see to that.
2        At that time, I proceed with the Board to
3    establish the date for determination.
4        MR. SEDLAK:  Six weeks.
5        MR. ST. CHARLES:  Once we get the
6    briefs, we will establish the date.  I think it
7    will be the onus on us to make at least some time
8    frame to have a determination.
9        MR. OSETEK:  All right.
10       MR. ST. CHARLES:  So we are all clear?
11       MR. SEYMOUR:  Do we want to set a number
12   of weeks after the transcript?
13       MR. SEDLAK:  We are looking at eight
14   weeks out.
15       MR. GREEN:  One set within two weeks, so
16   within two weeks, so eight weeks.
17       MR. OSETEK:  This one won't take too
18   long.
19       MR. SEYMOUR:  Four weeks after receipt
20   of the briefs.
21       Now we have a definite time frame set.
22       MR. SEDLAK:  Seven weeks from now to
23   receive the briefs.
24       MR. SEYMOUR:  And four weeks —
25       MR. SEDLAK:  Eleven weeks from now.

59

1    MR. SEYMOUR:  Roughly, yes.
2        MR. SEDLAK:  30th of October.
3        MR. ST. CHARLES:  Did you hear our
4    milestone we are trying to set?
5        Four weeks after receiving the briefs, so
6    the 30th of October.
7        MR. OSETEK:  Do we have a page limit?
8        MR. SEYMOUR:  That was my request.  I
9    don't know if the supervisor --
10       MR. ST. CHARLES:  Understanding if we
11   are flexible on the six weeks, we can see some
12   flexibility on the four weeks.
13       MR. SEDLAK:  As long as we can read it.
14       MR. OSETEK:  You don't need our
15   permission to have flexibility.
16       MR. SEYMOUR:  I would still like to set
17   a page number.
18       MR. ST. CHARLES:  With that said, at
19   that time motion to adjourn.
20       MR. SEYMOUR:  Motion to adjourn.
21       MR. SEDLAK:  Support motion.
22       MR. ST. CHARLES:  All in favor say aye.
23       BOARD:  Aye.
24       MR. ST. CHARLES:  Those opposed?
25       BOARD:  No response.

60

1    MR. ST. CHARLES:  Motion caries.
2    (Hearing concluded at 7:30)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

61

1    (STATE OF MICHIGAN)
2    COUNTY OF WASHTENAW)
3        Certificate of Notary Public
4    I do hereby certify the witness, whose
5    attached testimony was taken in the above matter,
6    was first duly sworn to tell the truth; the
7    testimony contained herein was reduced to writing
8    in the presence of the witness by means of
9    stenography; afterwards transcribed; and is a true
10   and complete transcript of the testimony given.
11   I further certify that I am not connected by
12   blood or marriage with any of the parties; their
13   attorneys or agents; and that I am not interested,
14   directly or indirectly or financially in the matter
15   of controversy.
16   In witness whereof, I have hereunto set my
17   hand this day at Ann Arbor, Michigan, County of
18   Washtenaw, State of Michigan.
19
20   ---------------------------------
21   Regina Tina Krzesicki, CSR#004579
22   Certified Shorthand Reporter
23   Notary Public, Washtenaw County,
24   Michigan
25

16 (Pages 58 to 61)



| A | | | | | | | |
|---|---|---|---|---|---|---|---|
| **A** | 41:21 | adopt | 31:9 | 20:18 | 49:14 | 18:10 | 17:8 |
| **ability** | 42:1 | 14:10 | 31:20 | 52:1 | 53:14 | 34:12 | 18:12 |
| 9:1 | 48:23 | 15:22 | ago 14:6 | **answer** | **appro...** | 50:8 | 36:3 |
| 14:1 | 49:4,5 | **adopted** | 51:3 | 29:7,8 | 11:9 | 50:19 | 36:19 |
| 39:16 | 50:3 | 17:9 | **agree** | 34:12 | 14:22 | 51:14 | 37:3 |
| **able** | 50:17 | 17:16 | 55:25 | 38:19 | 18:22 | 52:11 | 44:5 |
| 6:22 | **action** | **advise** | **ahead** | 50:22 | 26:8 | 52:13 | **away** |
| 43:18 | 28:11 | 35:9 | 53:9 | 51:13 | 35:20 | **asking** | 37:1 |
| 43:23 | 29:11 | **advis...** | **aim** 36:8 | **answered** | 45:16 | 39:9 | 45:25 |
| 56:3 | **actions** | 54:18 | 36:14 | 50:9 | 51:24 | 48:8 | **ax** 30:5 |
| **about** | 27:19 | **affect** | **Alleg...** | 50:21 | 56:11 | 48:18 | **aye** |
| 6:23 | 30:12 | 40:20 | 4:8,9 | 51:5 | **approved** | **assau...** | 59:22 |
| 7:18 | 30:16 | **affects** | **allow** | 51:11 | 27:2,9 | 31:19 | 59:23 |
| 8:8,10 | 31:9 | 21:24 | 9:4 | 53:3 | **appro...** | **assess** | |
| 13:8 | **activ...** | 41:13 | 11:11 | **answe...** | 44:6 | 30:13 | **B** |
| 15:13 | 30:16 | **afraid** | 14:12 | 50:10 | **Arbor** | 31:10 | **B** 2:25 |
| 15:19 | **activity** | 45:20 | 16:11 | **answers** | 2:5,14 | 45:4 | 3:12 |
| 15:21 | 29:15 | **after** | 19:20 | 51:10 | 61:17 | **assigned** | 49:23 |
| 15:21 | **actually** | 6:8,15 | 49:10 | 51:20 | **argue** | 28:7 | 49:23 |
| 15:23 | 12:20 | 9:16 | **allowed** | 52:25 | 32:24 | 43:1 | **back** |
| 16:4 | 23:24 | 13:11 | 34:4 | 53:4 | **argument** | 43:12 | 6:21 |
| 18:16 | 27:18 | 13:13 | 46:22 | **anybody** | 46:21 | 43:13 | 7:19 |
| 24:23 | **addit...** | 16:16 | 48:8 | 29:25 | **arm** 24:3 | 43:24 | 8:16 |
| 30:20 | 8:8 | 23:19 | **allowing** | 45:14 | 24:3 | **assist** | 11:8 |
| 33:22 | 9:20 | 49:24 | 37:23 | **anymore** | **arms** | 23:12 | 16:1 |
| 36:2 | 46:24 | 51:5 | **allows** | 8:11 | 36:23 | **Assis...** | 23:1 |
| 38:17 | 51:23 | 55:8 | 19:12 | **anything** | 36:24 | 29:18 | 23:11 |
| 38:25 | 54:13 | 56:1 | 19:15 | 7:25 | **arm's** | **ASSOC...** | 23:18 |
| 39:3,9 | **address** | 56:13 | 56:24 | 21:7 | 21:11 | 2:11 | 29:22 |
| 39:11 | 7:8 | 57:1,6 | **allude** | 23:23 | **arm-bar** | **assume** | 32:10 |
| 39:25 | 25:20 | 57:9 | 32:19 | 30:1 | 23:25 | 55:11 | 42:4 |
| 42:7 | 55:16 | 57:17 | **along** | 32:20 | 24:2 | 55:12 | 48:6 |
| 42:22 | **adequate** | 58:12 | 33:4 | 36:13 | **arm-bars** | 55:20 | 49:17 |
| 44:12 | 20:5 | 58:19 | 52:4 | 53:1 | 23:20 | **assuming** | 51:25 |
| 44:18 | **adhered** | 59:5 | **already** | **Anytime** | 24:25 | 14:9 | **ball** |
| 44:23 | 17:13 | **after...** | 52:2 | 42:10 | 26:24 | **attached** | 48:6 |
| 51:2 | **adjourn** | 61:9 | 55:9 | **anywhere** | 27:13 | 61:5 | **bar** |
| 52:14 | 59:19 | **again** | 55:19 | 21:4 | **around** | **attempt** | 33:11 |
| **above** | 59:20 | 6:5 | 56:20 | 21:20 | 23:13 | 11:8 | **based** |
| 61:5 | **adjou...** | 10:14 | **Ameri...** | 21:22 | 37:2 | 23:17 | 26:12 |
| **Absol...** | 5:1 | 16:1 | 41:25 | 22:23 | **arrest** | 32:1 | 38:12 |
| 33:9 | **adjou...** | 49:2,4 | **amount** | **apart** | 22:25 | **atten...** | 46:25 |
| 33:13 | 6:22 | **against** | 23:21 | 42:22 | 23:10 | 25:12 | **basic** |
| **academy** | 7:13 | 21:10 | 25:16 | **appear** | 24:18 | **attorney** | 24:16 |
| 24:17 | 7:15 | 23:24 | 55:8 | 12:10 | 25:18 | 5:2 | **basic...** |
| **accident** | 47:22 | 36:23 | **ample** | 14:15 | 35:8,9 | **attor...** | 24:3 |
| 33:14 | **Admin...** | **age** 50:4 | 8:9 | **appea...** | 40:20 | 61:13 | 48:6 |
| **accom...** | 19:11 | **agencies** | 51:12 | 2:1 | **arrested** | **August** | 48:18 |
| 43:19 | 48:23 | 17:13 | **and/or** | 5:4 | 34:4 | 1:13 | 52:11 |
| 43:22 | 49:4 | 20:6 | 25:18 | **Appea...** | **arrive** | 4:2 | **basis** |
| **accom...** | **admis...** | **agency** | 26:24 | 2:7,16 | 32:6 | **autho...** | 13:8 |
| 14:1 | 26:5 | 19:12 | 27:2 | 5:6 | **articles** | 43:20 | 19:5 |
| 14:13 | **admis...** | 19:13 | 57:17 | **apple** | 18:5 | **authors** | 50:22 |
| **accom...** | 25:25 | **agents** | **ankle** | 52:1 | **ascer...** | 18:8 | 52:14 |
| 25:18 | 26:8 | 20:8 | 42:9 | **appli...** | 48:17 | **avail...** | **baton** |
| **accurate** | **admit** | 61:13 | **Ann** 2:5 | 21:13 | **aside** | 7:1 | 20:8 |
| 36:8 | 19:13 | **aggre...** | 2:14 | **appli...** | 33:2 | 37:14 | **batte...** |
| 36:13 | 26:15 | 28:18 | 61:17 | 22:4 | **asked** | 54:23 | 37:10 |
| **act** 1:3 | 26:19 | **aggre...** | **another** | **appli...** | 6:21 | **avenue** | **battery** |
| 15:5 | **admitted** | 27:19 | 7:19 | 15:16 | 7:10 | 53:18 | 37:9 |
| | 19:6 | 30:12 | 15:2 | **appre...** | 17:21 | **aware** | **bed** |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 29:21 | 42:9 | 36:9 | build... | 13:6 | 19:7,9 | 15:21 | 36:11 |
| 29:22 | 44:15 | 36:10 | 31:3 | 19:16 | 25:23 | 46:20 | 36:14 |
| **before** | 44:22 | 37:6,6 | **burden** | 19:19 | 26:2 | 47:1,6 | **closed** |
| 1:5 | 46:3 | 37:8 | 47:12 | 26:9 | 26:11 | 47:9 | 21:3 |
| 9:18 | 48:9 | 37:14 | 47:13 | 47:22 | 26:19 | 47:20 | **closer** |
| 13:11 | 48:18 | 40:21 | _____ | 53:9 | 32:3 | 47:25 | 36:17 |
| 13:13 | 48:22 | 42:18 | C | 53:10 | 32:10 | 48:9 | **clothes** |
| 13:20 | 49:8 | 42:21 | C 9:15 | **cause** | 34:19 | 49:11 | 41:10 |
| 16:21 | 50:11 | 54:20 | 49:23 | 24:4 | 39:6 | 49:19 | **comba...** |
| 18:10 | 50:20 | 54:24 | call 4:6 | **causes** | 39:22 | 50:3 | 31:18 |
| 25:23 | 50:23 | 55:2,4 | 5:18 | 21:23 | 41:1,7 | 51:2,8 | **come** |
| 28:5 | 52:20 | 56:24 | 6:7,11 | **Cente...** | 41:17 | 53:20 | 7:19 |
| 30:12 | **Berg** | **bottom** | 6:12 | 29:20 | 46:15 | **circuit** | 18:4 |
| 31:9 | 2:25 | 19:18 | 8:12 | **certain** | 47:10 | 21:3 | 33:4,6 |
| 31:13 | 4:12 | **brief** | 8:17 | 13:23 | 47:16 | 36:11 | 33:11 |
| 32:19 | 32:6 | 49:16 | 9:5 | 14:3 | 47:24 | **circu...** | 46:2 |
| 37:1 | **between** | 54:5 | 35:19 | 52:16 | 49:2 | 11:15 | 56:23 |
| 41:1 | 6:20 | 55:3,6 | 43:14 | **certa...** | 49:14 | 27:11 | **comes** |
| 43:4 | 21:6 | 56:8 | 43:17 | 56:3 | 49:17 | 28:10 | 57:14 |
| 44:16 | 21:20 | **briefly** | 46:23 | 57:13 | 53:11 | 29:11 | **come-...** |
| 46:19 | 55:4 | 13:1 | 47:2,5 | **Certi...** | 53:13 | 32:16 | 26:25 |
| 46:21 | **beyond** | 20:21 | 47:6,8 | 61:3 | 53:22 | 34:25 | 27:13 |
| 51:12 | 21:7 | **briefs** | 47:17 | 61:22 | 54:6 | 35:18 | **coming** |
| 52:5 | **biceps** | 56:25 | **called** | **Certi...** | 54:10 | 35:21 | 8:16 |
| **behalf** | 42:17 | 57:1,3 | 9:16 | 61:22 | 54:14 | 37:21 | 16:1 |
| 2:7,16 | Big 45:1 | 58:6 | 9:23 | **certify** | 55:11 | 38:9 | **command** |
| 5:6,8 | **bite** | 58:20 | 12:12 | 61:4 | 56:6 | 40:14 | 23:6 |
| 7:3 | 52:1 | 58:23 | 19:4 | 61:11 | 56:20 | **cited** | **commands** |
| **behind** | **blood** | 59:5 | 23:20 | **change** | 57:8 | 26:13 | 20:7 |
| 22:25 | 61:12 | **Brighton** | 23:21 | 51:20 | 57:13 | **citizen** | 22:15 |
| 23:11 | **Board** | 1:17 | 28:14 | **changing** | 57:22 | 28:25 | 22:22 |
| **being** | 1:5 | 4:1 | 32:13 | 51:9 | 58:1,5 | **civil** | **commi...** |
| 14:13 | 2:21 | **bring** | 38:5 | 51:15 | 58:10 | 40:21 | 30:9 |
| 16:7 | 4:11 | 6:22 | 49:24 | 51:15 | 59:3 | 40:22 | **common** |
| 17:4 | 5:3 | 11:8 | **calling** | 52:23 | 59:10 | 48:10 | 20:16 |
| 21:10 | 9:1 | **broad** | 47:1 | 53:4 | 59:18 | **clari...** | 37:5 |
| 21:21 | 10:13 | 19:14 | **calls** | **charge** | 59:22 | 52:23 | **commonly** |
| 25:4 | 13:20 | 49:4,5 | 38:16 | 21:20 | 59:24 | 52:24 | 26:25 |
| 31:19 | 41:2 | **broke** | 50:13 | 21:23 | 60:1 | **clarify** | **compe...** |
| 34:11 | 48:9 | 6:25 | **came** | **Charles** | **chemical** | 52:21 | 27:11 |
| **believe** | 48:25 | **Brookins** | 6:21 | 2:23 | 20:8 | **class** | **compe...** |
| 6:2 | 53:15 | 2:8,19 | 24:23 | 4:5,10 | **chest** | 24:24 | 14:20 |
| 7:9,9 | 54:21 | 3:9 | **canine** | 4:22 | 32:25 | **clear** | **compe...** |
| 7:11 | 55:2 | 6:18 | 20:9 | 4:23 | **chief** | 10:16 | 14:20 |
| 8:11 | 55:23 | 6:24 | **capable** | 5:10 | 2:8,19 | 28:22 | 52:20 |
| 8:13 | 56:24 | 8:10 | 34:10 | 5:21 | 3:9 | 30:19 | **complete** |
| 8:16 | 58:2 | 11:7 | **car** | 5:25 | 5:6,13 | 30:24 | 61:10 |
| 10:5 | 59:23 | 11:17 | 22:23 | 7:20 | 5:15 | 52:25 | **compl...** |
| 11:13 | 59:25 | 15:21 | 23:24 | 7:24 | 5:23 | 58:10 | 6:19 |
| 13:16 | **bodily** | 46:20 | 30:2 | 8:2,15 | 6:6,10 | **clearly** | 6:25 |
| 13:17 | 37:19 | 47:1,6 | 33:25 | 8:19 | 6:12 | 26:5 | **comply** |
| 14:25 | **body** | 47:9 | 35:12 | 8:23 | 6:12 | 51:7 | 24:5 |
| 15:20 | 21:5 | 47:20 | **care** | 9:7,8 | 6:18 | **clerk** | **concern** |
| 16:20 | 21:23 | 47:25 | 9:19 | 10:14 | 6:20 | 2:22 | 16:3 |
| 18:19 | **boot** | 48:9 | **career** | 10:20 | 6:24 | 9:9,10 | 38:9 |
| 19:19 | 31:5 | 49:11 | 44:3 | 10:22 | 7:11 | 55:4 | **concerns** |
| 26:12 | **both** | 49:19 | **caries** | 11:11 | 7:23 | **client** | 36:18 |
| 34:16 | 10:4 | 50:3 | 60:1 | 12:24 | 8:10 | 47:23 | **concl...** |
| 34:17 | 20:23 | 51:2,8 | **carrying** | 13:14 | 11:7 | **close** | 60:2 |
| 38:2 | 31:10 | **building** | 29:18 | 14:23 | 11:17 | 11:6 | **conol...** |
| 38:12 | 31:20 | 30:1 | **case** | 16:11 | 13:25 | 32:25 | 52:14 |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 54:2 | 23:3 | create | 58:3,6 | 12:3 | 37:7 | 18:15 | during |
| 57:12 | 27:23 | 39:17 | day | 12:21 | diffe... | 18:20 | 42:23 |
| confront | contr... | criminal | 61:17 | 13:4 | 45:1 | 18:21 | 43:10 |
| 12:18 | 21:25 | 28:12 | days | 13:22 | diffe... | 19:3,4 | duties |
| confr... | control | 29:3 | 55:13 | 14:9 | 18:8 | 19:18 | 13:24 |
| 35:17 | 21:24 | 29:13 | 56:8,9 | 14:16 | 24:8 | 22:9 | 14:12 |
| conne... | 22:2 | 40:21 | 56:13 | 15:6 | 53:18 | 25:7 | 14:19 |
| 61:11 | 24:11 | cross | day-t... | 17:9 | dire 3:6 | docum... | 29:14 |
| conne... | 24:11 | 41:1 | 22:20 | 17:11 | 12:22 | 10:4 | 42:25 |
| 41:15 | 30:18 | 41:17 | dead | 18:20 | direct | 18:4,7 | 43:3,4 |
| Connelly | 48:14 | 51:18 | 37:10 | 22:10 | 20:13 | 18:9 | 43:6,7 |
| 2:18 | contr... | cross... | deadly | 22:21 | 21:9 | 19:2 | 43:9 |
| 5:3 | 61:15 | 50:8 | 20:9 | 25:6,9 | 25:12 | doing | 52:16 |
| consc... | conve... | 50:19 | 22:8 | 25:15 | 51:18 | 14:3 | duty |
| 22:1 | 12:18 | 51:6 | deal | 26:4 | 53:3,3 | 17:25 | 25:19 |
| consi... | coope... | 52:8 | 32:19 | 27:3 | 53:17 | 23:1 | 40:3 |
| 32:15 | 35:10 | crowd | 55:24 | 27:21 | 54:20 | 30:4 | 42:3,6 |
| consi... | coope... | 30:18 | dealt | 27:23 | 55:1 | 51:14 | 44:8 |
| 27:22 | 32:22 | 28:18 | 28:19 | 28:1 | directly | 53:4 | 44:14 |
| 52:19 | copies | 28:18 | December | 30:7 | 61:14 | domestic | |
| consult | 9:25 | Crowe | 11:23 | 32:12 | Disab... | 33:16 | E |
| 47:23 | 10:22 | 2:20 | decide | 34:5 | 41:25 | done 6:9 | E 2:13 |
| consu... | 54:24 | 3:4 | 6:6 | 34:22 | disag... | 47:13 | 3:1,12 |
| 6:20 | copy | 5:18 | 15:4 | 40:15 | 32:23 | door | 9:15 |
| contact | 10:1 | 6:9,16 | 15:17 | 40:22 | disch... | 31:6 | 9:15 |
| 21:2,3 | 12:3 | 6:22 | decided | 43:19 | 50:6 | doors | 9:15 |
| 21:9 | 16:23 | 6:23 | 7:18 | 43:22 | discr... | 31:5,5 | 16:18 |
| 33:6 | 17:19 | 7:1,4 | 45:16 | 44:13 | 48:10 | down | 49:23 |
| 36:21 | 57:22 | 7:16 | deemed | depen... | 48:12 | 15:25 | 49:23 |
| 41:9 | correct | 7:21 | 50:6 | 21:19 | 48:25 | 17:14 | each |
| 41:12 | 5:16 | 8:17 | defen... | 23:21 | Discu... | 23:2,9 | 9:25 |
| conta... | 6:14 | 9:4,6 | 31:21 | Depends | 16:10 | 24:1,6 | 20:15 |
| 41:14 | 7:9,22 | 9:8,13 | defense | 43:3 | 19:8 | 24:9 | 54:21 |
| conta... | 10:21 | 11:5 | 47:15 | depos... | 32:9 | 33:4 | earlier |
| 61:7 | 43:23 | 13:7 | defen... | 52:18 | 39:21 | 34:15 | 26:12 |
| contents | cots | 16:17 | 24:17 | Dept | 53:12 | 37:13 | econo... |
| 13:17 | 29:19 | 18:21 | 24:24 | 3:16 | 54:4 | 45:20 | 55:22 |
| conti... | Council | 19:22 | 25:22 | describe | disqu... | 45:21 | econo... |
| 4:25 | 27:2 | 34:10 | 26:23 | 35:19 | 50:6 | 51:8 | 55:16 |
| continue | counsel | 41:20 | 27:18 | descr... | distance | 53:20 | educated |
| 40:10 | 10:5 | crutches | defer | 32:14 | 36:1 | downs | 9:1 |
| Conti... | 27:5 | 50:16 | 47:1,4 | Desmond | 36:12 | 23:21 | effect |
| 11:19 | County | CSR 1:18 | definite | 2:23 | doctor | 24:25 | 20:22 |
| 19:22 | 61:2 | CSR#0... | 58:21 | 4:13 | 43:15 | drawb... | 21:16 |
| 26:21 | 61:17 | 61:21 | defin... | 4:14 | 43:16 | 45:19 | 25:18 |
| 29:10 | 61:23 | cumul... | 33:3 | deter... | doctrine | drink | effec... |
| 32:11 | couple | 8:12 | defin... | 47:14 | 11:25 | 33:7 | 36:14 |
| 34:21 | 14:6,7 | 18:17 | 38:19 | 58:3,8 | 12:16 | drinking | 36:15 |
| 39:24 | 16:8 | current | deliv... | deter... | document | 33:16 | 37:22 |
| conti... | course | 20:13 | 55:3 | 55:8 | 9:23 | drive | 41:9 |
| 12:1,8 | 29:13 | 21:19 | 57:18 | deter... | 12:7 | 2:4 | 48:16 |
| 12:16 | court | 21:19 | depar... | 14:5 | 12:14 | 34:4 | effects |
| 13:18 | 48:6 | C-r-o... | 2:9 | 20:3 | 13:9 | driver | 20:23 |
| 15:19 | 48:11 | 11:5 | 5:7 | device | 13:16 | 34:2 | effic... |
| 18:1 | 48:13 | | 7:3 | 20:25 | 13:17 | drunk | 55:22 |
| 18:13 | 48:22 | D | 9:24 | 20:25 | 14:16 | 33:8 | EGGAN |
| 18:15 | 49:3 | D 3:1 | 10:2 | 21:8 | 17:6 | due 57:4 | 2:2 |
| 19:24 | 55:17 | 9:15 | 10:17 | 46:4 | 17:16 | duly | eight |
| 20:6 | 55:24 | 16:18 | 11:21 | devices | 17:24 | 61:6 | 58:13 |
| 22:4,9 | cover | date | 11:22 | 20:12 | 18:11 | dupli... | 58:16 |
| 22:14 | 12:12 | 1:13 | 11:23 | 20:19 | 18:12 | 15:20 | eight... |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| either | 58:3,6 | 50:1 | 20:1 | felt 7:6 | 9:17 | 7:21 | 61:11 |
| 6:10 | even | examined | ------ | few 18:5 | 49:25 | 47:12 | ------ |
| 13:11 | 14:9 | 9:17 | F | 32:25 | foot | found | G |
| 21:17 | 15:20 | 49:25 | F 2:21 | 49:15 | 23:17 | 17:20 | G 1:7 |
| 29:25 | 19:15 | example | 49:23 | fight | force | 17:23 | 9:15 |
| 35:17 | 40:10 | 23:10 | face | 30:18 | 3:17 | found... | gain |
| 38:2 | 48:11 | 28:23 | 14:15 | 30:20 | 10:2 | 18:22 | 12:19 |
| 38:10 | 48:22 | 29:20 | 32:24 | 31:16 | 10:18 | 26:8 | gave |
| 38:23 | 48:23 | 31:14 | faced | 31:17 | 12:1,8 | 38:6 | 43:15 |
| 39:17 | 49:3 | 39:23 | 35:17 | 40:9 | 12:16 | 38:22 | general |
| 57:18 | evening | examples | 38:18 | fighting | 12:17 | four | 17:6 |
| elderly | 5:12 | 28:16 | 45:3,8 | 30:21 | 12:19 | 26:22 | 21:24 |
| 29:21 | 6:18 | 29:17 | fact 6:7 | 31:18 | 13:18 | 58:19 | 37:4,8 |
| elect... | 6:25 | 32:18 | 14:5 | 31:19 | 14:11 | 58:24 | gener... |
| 20:13 | event | 35:4 | 18:24 | fights | 15:2 | 59:5 | 20:5 |
| 21:21 | 6:11 | excerpt | 44:16 | 33:12 | 15:20 | 59:12 | 36:4 |
| elect... | 11:7 | 9:22 | 46:23 | figure | 18:1 | frame | 55:7 |
| 21:4 | 37:23 | exces... | 50:5 | 31:17 | 16:13 | 56:23 | gentl... |
| elect... | event... | 32:15 | 52:18 | final | 18:16 | 58:8 | 54:6 |
| 27:1 | 40:11 | 33:16 | facts | 56:2 | 19:24 | 58:21 | 56:10 |
| 36:7,9 | ever | exercise | 8:25 | finan... | 19:25 | Frank | gets |
| Eleven | 17:4 | 48:13 | 19:18 | 61:14 | 20:4,5 | 2:4 | 18:24 |
| 58:25 | 17:15 | exhibit | fair | find | 20:7 | from | 24:17 |
| embel... | 29:25 | 9:22 | 55:17 | 13:7 | 20:10 | 8:10 | getting |
| 52:23 | 31:2 | 10:1,7 | fairly | 17:21 | 22:5,7 | 9:22 | 19:18 |
| employ | 33:6 | 10:9 | 19:14 | 18:2 | 22:8,9 | 11:9 | give |
| 20:7 | 33:22 | 10:18 | 57:6 | 56:7 | 22:15 | 12:18 | 16:8 |
| 25:15 | 34:25 | 12:6 | fall | 57:20 | 23:3 | 13:21 | 19:13 |
| employed | 42:3 | 12:23 | 22:4,6 | fine | 25:9 | 21:4 | 28:16 |
| 11:22 | 45:10 | 13:1 | 22:12 | 48:7 | 25:16 | 21:22 | 35:4 |
| 13:23 | 45:12 | 16:23 | 29:21 | 53:8 | 27:22 | 22:23 | 49:5 |
| emplo... | 45:14 | 17:19 | familiar | 57:10 | 27:23 | 23:5 | 52:11 |
| 14:17 | every | 26:1,4 | 11:25 | finished | 30:7 | 23:23 | 53:11 |
| 50:7 | 24:16 | 26:15 | 20:12 | 5:13 | 30:13 | 30:8 | given |
| end 9:19 | 45:7 | 26:17 | 20:20 | 47:21 | 31:2,3 | 33:25 | 20:16 |
| 15:13 | 46:8 | 26:20 | 24:20 | 54:14 | 31:10 | 35:10 | 43:20 |
| 30:4 | 51:4,4 | 27:24 | 25:10 | firm | 31:11 | 35:13 | 61:10 |
| 49:6 | 51:13 | exhibits | 41:20 | 52:25 | 33:4 | 36:25 | go 7:16 |
| endings | every... | 9:20 | 41:25 | first | 37:17 | 37:1 | 15:25 |
| 41:13 | 54:22 | 15:15 | 42:2 | 12:13 | 37:18 | 37:19 | 25:24 |
| Enfor... | everyone | 16:14 | 52:9 | 14:5 | 37:24 | 44:12 | 29:19 |
| 27:1,4 | 4:7 | 16:15 | famil... | 17:1 | 39:14 | 44:23 | 30:22 |
| engage | evidence | existed | 20:19 | 22:15 | 39:17 | 50:7 | 30:23 |
| 30:12 | 7:7 | 27:11 | far | 25:13 | 40:12 | 58:22 | 31:15 |
| 31:9 | 15:11 | exper... | 17:11 | 26:22 | 40:13 | 58:25 | 31:15 |
| enough | 19:6 | 38:13 | Farms | 31:24 | 40:19 | front | 31:17 |
| 9:25 | 19:11 | 38:21 | 29:20 | 31:25 | 42:14 | 15:25 | 32:20 |
| entitled | 19:14 | expert | farther | 55:10 | 45:5 | 16:24 | 37:16 |
| 11:14 | 19:15 | 38:23 | 25:24 | 61:6 | 45:17 | full | 41:1 |
| equip... | 19:21 | exper... | fatal | flag 4:8 | forceful | 21:20 | 51:25 |
| 38:24 | 29:23 | 39:9 | 12:19 | flexi... | 20:3 | 21:22 | 53:8 |
| escal... | 48:12 | 39:11 | 40:12 | 56:25 | form | 43:21 | 57:1 |
| 20:2 | 48:15 | explain | favor | 59:12 | 14:1 | fully | God 9:12 |
| escape | 48:24 | 20:21 | 59:22 | 59:15 | formally | 32:22 | going |
| 23:17 | Ex 3:14 | 34:11 | fearful | flexible | 8:4 | funct... | 5:18 |
| essence | 3:16 | 35:4 | 37:12 | 49:9 | former | 40:1 | 6:7,11 |
| 7:20 | Exami... | expla... | 37:13 | 57:15 | 27:5 | funda... | 7:3 |
| 28:21 | 3:5,7 | 31:15 | 45:22 | 59:11 | forth | 27:8 | 9:3 |
| 47:16 | 3:10 | extend | feet | focus | 47:15 | further | 19:20 |
| 48:19 | 11:2 | 21:13 | 21:6 | 53:18 | forward | 46:11 | 22:18 |
| estab... | 41:18 | extent | 36:2 | follows | 7:16 | 52:3 | 24:16 |

31:6
34:14
35:6
35:15
36:13
37:11
46:23
47:5,8
47:12
47:17
47:19
49:9
53:16
56:7
**gone**
51:18
51:24
**gotten**
28:17
32:24
**grab**
23:18
**greater**
36:12
36:15
36:16
36:17
**Green**
1:5,15
2:21
3:16
4:15
4:16
10:1
10:17
11:21
11:23
13:22
15:22
17:5,8
17:15
18:6,9
25:8
27:21
58:15
**ground**
24:1,7
24:10
49:24
**grounds**
50:18
**group**
30:19
**guess**
14:24
38:19
38:20
47:7
48:5
**guessing**
39:3

**guidance**
53:15
**guide**
23:23
**gun** 14:2
14:10
14:11
15:1,8
20:18
21:8
21:18
22:3
28:13
32:14
33:3
35:16
35:20
36:18
36:19
36:21
37:21
38:3,7
38:8
38:24
39:13
39:14
39:23
45:10
45:23
46:4
**guns**
6:23
7:6,7
8:8,10
14:7
15:13
15:23
39:11
39:19
**guy** 30:3

**H**
H 2:22
3:12
49:23
**Hall**
1:15
**hand**
9:10
20:25
21:9
23:4
26:10
37:11
37:13
61:17
**handc...**
24:17
**hands**
20:7
22:24

22:25
23:6,7
23:11
23:13
24:13
25:20
27:15
32:13
37:14
**hands-on**
25:1
33:11
33:19
35:2
37:25
38:5,8
40:2,3
**happen**
35:5,6
35:15
**happened**
51:7
**happens**
31:16
35:14
55:8
**harder**
49:6
**having**
9:16
49:24
**heading**
27:17
**hear**
8:11
11:10
13:6
13:14
34:10
59:3
**heard**
38:22
38:24
45:1
51:21
56:20
**hearing**
1:5
5:1
11:6
16:22
49:1
60:2
**hearsay**
18:20
**held**
16:10
19:8
20:25
21:8
21:10

32:9
39:21
53:12
54:4
**help**
9:12
29:22
**her** 38:3
**hereunto**
61:16
**high**
21:3
**him** 6:5
11:8
13:8
23:24
24:1,3
38:3
38:22
39:9
39:10
47:2
51:4
52:13
52:17
**hip**
42:19
**hips**
42:18
**hit** 36:9
36:10
36:22
**hitting**
36:16
**hold**
6:11
23:25
23:25
23:25
24:2
47:8
**holding**
36:22
**holds**
26:25
27:13
**holsters**
46:2
**homes**
31:7
**hope**
55:13
**host**
51:20
**hour**
7:17
**hours**
51:3
**Huron**
2:13
**hurting**
21:10

30:8
**hypot...**
38:17

**I**
**IDENT...**
3:13
II 25:13
**impact**
20:8
21:16
**impai...**
50:5
**improper**
51:21
**impulse**
20:14
**inapp...**
34:14
**incap...**
50:5
**incap...**
22:1
50:9
50:11
**incident**
30:25
35:23
**include**
20:7
**included**
20:6
**inclu...**
14:1
20:21
51:5
**incoh...**
22:2
**incom...**
50:17
**incom...**
50:20
50:23
**indicate**
44:18
**indic...**
5:17
5:18
6:5,14
14:25
22:14
26:11
35:25
45:19
46:19
**indir...**
61:14
**indiv...**
20:22
21:14
21:16

33:7
38:2
39:12
40:15
**inflict**
24:4
**infor...**
18:2
51:17
51:18
51:23
52:2
**injured**
24:20
29:19
**injury**
24:23
25:2
37:19
37:20
**insist**
56:17
**insta...**
28:23
32:23
**instr...**
53:7
**Integ...**
3:15
9:24
12:4
17:17
**intent**
6:10
52:16
**inten...**
6:5
**inter...**
61:13
**internet**
17:20
17:22
18:25
19:2
**inter...**
48:14
**inter...**
48:16
**intox...**
28:20
35:11
35:18
**intro...**
9:21
**intro...**
13:3
18:22
19:5
**inves...**
32:20
**invol...**

21:25
**involve**
27:18
28:12
30:17
**involved**
22:21
24:25
29:13
34:23
35:22
54:21
**invol...**
31:23
**invol...**
24:12
**in-so...**
24:18
**issue**
7:5
13:18
13:19
14:4
14:18
15:1,3
15:3
15:16
15:24
17:23
25:5
33:10
**issues**
17:11
36:19
37:4,6
53:8
**item**
22:15
23:3
**items**
29:23
IV 26:22

**J**
J 2:3
**job**
13:23
34:22
52:16
**join** 4:7
**judge**
48:12
**July** 5:1
5:12
15:13
**just**
13:10
14:6,7
22:6,7
24:6,7
30:22

35:25
37:15
45:24
51:15
**Justice**
9:24
12:3
12:21
13:5
14:16
15:7
17:9
17:11
18:20
22:10
27:23
**justify**
33:2,3

**K**
K 49:23
**Keep**
51:11
**kick**
31:5
**kind**
33:5
34:14
**know**
5:25
6:15
15:18
16:7
17:15
19:15
22:3
24:15
24:23
30:25
35:6
35:15
41:22
53:2
56:7,9
57:3
57:16
59:9
**knowl...**
46:8
**Krzes...**
1:18
61:21

**L**
L 1:7
2:23
9:15
**Lake**
1:16
**large**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 29:23 | legal | 41:2 | 20:4 | 29:13 | 44:4 | 57:14 | 46:18 |
| 30:25 | 53:14 | 46:4 | | 55:16 | met | most | 48:5 |
| 31:16 | length | 54:16 | ___M___ | 61:5 | 16:20 | 15:15 | 49:12 |
| 31:17 | 21:11 | 54:17 | M 2:25 | 61:14 | methods | motion | 50:2 |
| Larry | 21:19 | 54:19 | made | maximum | 24:8 | 59:19 | 51:3 |
| 2:16 | lengthy | 59:16 | 13:24 | 23:11 | 26:24 | 59:20 | 52:6 |
| 2:19 | 6:19 | likel... | 23:17 | may | MI 2:5 | 59:21 | 53:19 |
| 5:9 | less | 36:16 | maintain | 12:22 | 2:14 | 60:1 | 53:24 |
| 13:21 | 20:9 | 46:24 | 8:9 | 12:25 | Michael | move | 55:7 |
| 14:17 | 22:6,6 | likely | 24:11 | 16:1 | 2:22 | 11:6 | 55:20 |
| 24:12 | 22:10 | 36:12 | maint... | 19:13 | Michigan | 25:25 | 55:25 |
| 24:20 | 36:12 | Likewise | 46:6 | 23:23 | 1:17 | 30:25 | 56:12 |
| 50:9 | let 13:2 | 36:24 | maint... | 27:3 | 4:1 | 31:6 | 56:17 |
| 50:20 | 37:14 | limb | 46:9 | 28:24 | 14:9 | 53:9 | 57:24 |
| 52:15 | 55:16 | 50:4 | maint... | 32:21 | 15:5 | moving | must |
| last | lethal | limit | 37:9 | 32:22 | 15:10 | 7:21 | 23:1 |
| 6:18 | 20:9 | 57:16 | make | 38:21 | 19:2 | much | mutual |
| 7:10 | 22:7 | 59:7 | 7:23 | 40:10 | 27:1,4 | 33:7 | 31:18 |
| 8:7 | 22:11 | limit... | 9:1 | 40:11 | 41:20 | 40:10 | |
| 14:7 | 37:17 | 37:4 | 13:2 | 44:17 | 48:11 | muscle | ___N___ |
| 17:2,3 | 37:18 | 7:5 | 21:2 | 55:7 | 61:1 | 21:24 | N 1:7 |
| 19:23 | 37:24 | line | 22:18 | maybe | 61:17 | 21:25 | 3:1 |
| late | let's | 17:14 | 33:1 | 28:22 | 61:24 | Musko... | 9:15 |
| 5:12 | 22:23 | 50:24 | 37:9 | 42:7 | might | 2:2,3 | 9:15 |
| 7:17 | 55:12 | 52:4 | 41:12 | 55:17 | 11:9 | 3:5,10 | 49:23 |
| latitude | level | 53:17 | 47:2 | 55:23 | 14:15 | 5:5,5 | name |
| 49:5,9 | 20:4 | listen | 47:14 | MCOLS | 5:17 | 5:12 | 11:4 |
| law 27:1 | 30:13 | 55:18 | 48:15 | 10:10 | 44:24 | 5:17 | 16:20 |
| 27:4 | 45:4 | lists | 54:23 | 27:5 | miles... | 6:2,20 | 27:5 |
| 48:22 | 45:16 | 50:17 | 58:7 | mean | 57:19 | 7:8,22 | names |
| 49:3 | levels | Lloyd | makes | 23:7 | 59:4 | 8:1,3 | 20:16 |
| lawful | 20:5 | 2:4 | 21:2 | 31:20 | mind | 9:5,18 | nature |
| 25:18 | liabi... | LOCATION | 49:6 | 53:2 | 51:11 | 10:9 | 18:17 |
| 25:18 | 40:22 | 1:15 | making | meaning | 53:20 | 10:13 | 30:1 |
| laxed | 40:23 | lock | 46:21 | 36:15 | minimum | 10:19 | 34:8 |
| 48:25 | lieu | 24:3 | malfu... | means | 25:16 | 10:21 | neces... |
| lay | 38:7 | long | 37:8 | 20:3 | minute | 11:3 | 31:20 |
| 18:22 | 39:13 | 11:22 | many | 36:22 | 45:2 | 11:13 | 35:22 |
| 23:13 | life | 28:1,3 | 17:12 | 36:25 | 53:11 | 11:18 | neces... |
| 45:24 | 37:19 | 58:18 | 19:1 | 61:8 | 54:3 | 11:19 | 8:11 |
| leading | lifetime | 59:13 | 29:23 | meant | minutes | 13:10 | 8:14 |
| 29:4,7 | 42:12 | look | 31:5 | 50:12 | 49:15 | 13:16 | 20:1 |
| 34:7 | life-... | 25:7 | 37:15 | 50:23 | misses | 14:25 | 25:17 |
| 34:13 | 37:23 | looking | 37:16 | 52:21 | 39:8 | 19:22 | 31:11 |
| 34:17 | light | 19:9 | March | mecha... | mobile | 25:23 | 40:13 |
| 34:18 | 8:23 | 28:23 | 44:12 | 37:7 | 50:15 | 25:25 | 40:20 |
| learned | 42:3,6 | 58:13 | mark | 46:4 | mode | 26:21 | 45:5 |
| 14:6 | 44:8 | lose | 2:22 | meet | 48:14 | 29:6 | need 7:6 |
| least | 44:14 | 21:23 | 36:9 | 47:13 | Monday | 29:10 | 15:3 |
| 58:7 | light... | 21:25 | 36:10 | meeting | 10:6 | 32:8 | 16:6 |
| leave | 43:12 | loss | marked | 4:6 | months | 32:11 | 23:1 |
| 54:3 | 43:14 | 14:25 | 10:17 | 56:21 | 44:7 | 34:9 | 23:12 |
| 55:23 | 43:17 | 50:4 | 10:22 | Melvin | more 7:6 | 34:16 | 30:11 |
| leaves | 44:6 | lot | 12:6 | 2:3 | 20:3 | 34:21 | 31:8 |
| 16:5 | like | 25:8 | 25:8 | 5:5 | 36:14 | 38:12 | 32:5 |
| loft | 9:21 | 15:12 | 26:16 | member | 40:11 | 39:5,7 | 33:10 |
| 5:11 | 13:7 | 15:12 | 26:20 | 41:2 | 40:13 | 39:24 | 36:10 |
| 6:13 | 13:10 | lots | marriage | 54:21 | 40:19 | 40:24 | 36:14 |
| 6:18 | 13:14 | 15:15 | 61:12 | memory | 48:24 | 41:6 | 37:24 |
| 11:17 | 25:12 | 33:21 | matter | 5:10 | 51:16 | 46:13 | 47:13 |
| 39:16 | 31:24 | lower | 28:12 | menti... | | 46:16 | 52:20 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 57:1 | 61:23 | 8:7 | 59:2,6 | 31:3 | 57:6 | 53:25 | over |
| 59:14 | note | 16:15 | off 5:11 | 34:21 | operated | 54:2,7 | 51:18 |
| needed | 26:14 | 50:25 | 16:4 | 35:1 | 37:10 | 54:8 | overcome |
| 30:25 | 48:21 | objec... | 16:10 | 38:3 | opinion | 54:13 | 25:17 |
| needs | nothing | 16:14 | 18:24 | 38:10 | 9:2 | 55:14 | overrule |
| 46:6 | 9:12 | 47:24 | 19:8 | 39:18 | 39:25 | 56:15 | 9:3 |
| 52:22 | 13:5 | objec... | 22:23 | 40:5 | 40:7,8 | 57:3 | 19:20 |
| negative | 15:6,7 | 5:22 | 32:7,8 | 44:13 | 40:14 | 57:10 | 26:14 |
| 50:10 | 46:11 | 6:1 | 32:9 | offic... | 52:12 | 57:25 | 49:10 |
| 50:21 | 51:16 | 7:14 | 39:21 | 27:1,4 | oppor... | 58:9 | o'clock |
| nerve | November | 7:25 | 47:8 | 38:13 | 51:4 | 58:17 | 15:19 |
| 41:13 | 44:12 | 8:6,9 | 53:12 | official | 51:13 | 59:7 | |
| nerves | number | 8:14 | 54:4 | 7:23 | opposed | 59:14 | ___P___ |
| 41:13 | 3:13 | 8:15 | offered | 18:6 | 59:24 | other | page 3:2 |
| neuro | 25:13 | 8:16 | 25:17 | 19:2 | options | 7:24 | 3:13 |
| 21:24 | 31:16 | 8:20 | offers | often | 20:2 | 14:11 | 12:10 |
| neuro... | 35:14 | 8:20 | 23:22 | 29:20 | order | 15:14 | 12:11 |
| 41:14 | 58:11 | 9:3 | office | 29:23 | 4:6 | 18:4 | 12:11 |
| 41:15 | 59:17 | 10:15 | 43:10 | 35:5 | 36:11 | 18:16 | 12:12 |
| never | numbness | 13:2 | 43:10 | okay 8:2 | 48:14 | 20:8 | 12:13 |
| 8:1 | 21:22 | 13:15 | 43:13 | 10:25 | Osatek | 31:2 | 13:5 |
| 18:11 | numeral | 18:16 | 43:24 | 11:11 | 2:11 | 38:3 | 18:25 |
| 35:6 | 26:22 | 19:20 | 44:9 | 11:18 | 2:12 | 38:10 | 19:23 |
| new | | 26:6 | officer | 28:3 | 3:6,7 | 39:18 | 25:12 |
| 51:17 | ___O___ | 26:14 | 5:9 | 37:21 | 5:8,8 | 40:5 | 25:21 |
| 52:2,5 | O 1:7 | 26:15 | 9:8 | 39:6 | 5:24 | 40:25 | 59:7 |
| 53:8 | 9:15 | 26:17 | 13:23 | 54:6 | 6:4,14 | 42:10 | 59:17 |
| next | 9:15 | 26:18 | 14:12 | Once | 6:17 | 43:9 | pages |
| 23:3 | 16:18 | 29:4 | 14:13 | 58:5 | 8:5,18 | 43:25 | 13:5 |
| 53:19 | 49:23 | 38:6 | 14:21 | one 8:24 | 8:22 | 44:4 | 16:4 |
| 57:2 | 49:23 | 39:7 | 15:4 | 12:12 | 11:6 | 44:13 | paid |
| nine | 49:23 | 41:4,5 | 16:21 | 20:18 | 12:22 | 46:13 | 55:19 |
| 44:6 | Oak 1:5 | 41:6 | 22:21 | 25:12 | 12:25 | 46:15 | 55:20 |
| nobody | 1:15 | 49:10 | 24:16 | 31:21 | 14:23 | 46:16 | pain |
| 45:2 | 3:16 | 50:13 | 27:10 | 32:13 | 14:24 | 50:4 | 24:4 |
| 54:3 | 10:1 | 50:14 | 27:19 | 35:22 | 16:11 | 53:21 | Palmer |
| none | 10:17 | 53:16 | 28:5 | 36:8 | 16:16 | 53:23 | 2:25 |
| 15:15 | 11:21 | obsta... | 28:11 | 37:13 | 16:19 | 54:11 | 4:17 |
| 15:24 | 11:23 | 31:6 | 29:12 | 41:2 | 16:20 | others | 4:18 |
| 33:2 | 13:22 | obvious | 30:11 | 42:19 | 18:14 | 39:1 | parag... |
| 53:14 | 15:22 | 22:17 | 31:8 | 45:19 | 25:5 | other... | 19:23 |
| nonuse | 17:5,8 | obvio... | 31:25 | 46:8 | 26:2,3 | 37:12 | 25:13 |
| 15:8 | 17:15 | 14:5 | 33:24 | 52:1 | 26:18 | out 4:25 | 26:22 |
| non-l... | 18:6,9 | 19:10 | 37:24 | 55:19 | 29:4 | 8:20 | 27:6 |
| 3:17 | 25:8 | occasion | 38:2,4 | 55:20 | 32:7 | 8:25 | param... |
| 10:2 | Oaks | 28:24 | 38:10 | 58:15 | 34:7 | 13:7 | 29:18 |
| 10:18 | 27:21 | 33:6 | 38:14 | 58:17 | 38:6 | 21:13 | part |
| 25:9 | oath | 33:23 | 39:15 | ones | 38:15 | 22:9 | 34:22 |
| 27:9 | 49:20 | 42:19 | 39:18 | 42:20 | 41:5 | 22:24 | 40:9 |
| 27:12 | 51:12 | occas... | 39:25 | only 7:2 | 41:19 | 23:18 | parti... |
| 27:22 | 51:21 | 30:6 | 40:1,3 | 15:3 | 46:11 | 28:17 | 13:9 |
| non-p... | object | occupy | 40:4,8 | 31:10 | 46:23 | 29:21 | 17:6 |
| 44:9 | 11:16 | 37:11 | 40:15 | onto | 47:4 | 30:2,3 | 19:16 |
| normal | 18:14 | occur | 40:19 | 24:7 | 47:10 | 30:5 | 39:20 |
| 22:20 | 34:7 | 29:2 | 40:21 | onus | 47:11 | 30:19 | parties |
| normally | 38:15 | occurred | 45:3,7 | 58:7 | 47:19 | 30:24 | 31:22 |
| 11:13 | 47:19 | 24:15 | officers | on-line | 48:3 | 31:1 | 32:2 |
| 27:8 | 50:24 | 25:2 | 14:8 | 15:7 | 50:13 | 31:17 | 54:20 |
| 56:1 | 51:22 | occur... | 20:1 | open | 50:24 | 35:12 | 54:21 |
| Notary | 52:3 | 40:11 | 28:24 | 40:20 | 52:22 | 57:20 | 54:24 |
| 61:3 | objected | October | 30:6 | 40:22 | 53:25 | 58:14 | 61:12 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| party | 5:8 | 10:2 | 50:17 | progress | 52:7 | 34:12 | reason |
| 34:3 | 16:20 | 10:17 | prepare | 23:5 | purposes | 34:18 | 50:25 |
| passed | ph20:18 | 11:21 | 55:2 | 40:10 | 49:1 | 40:25 | reaso... |
| 21:20 | Philip | 11:23 | prepared | progr... | pushed | 46:14 | 19:25 |
| 21:21 | 2:25 | 12:4 | 5:19 | 12:17 | 33:2 | 46:15 | 25:16 |
| 52:2 | physical | 13:22 | 7:16 | 23:8 | put7:6 | 51:6 | 40:19 |
| passe... | 14:3 | 13:23 | 16:3 | project | 22:9 | 52:4 | 48:13 |
| 34:2,2 | 21:9 | 14:3,8 | presence | 36:6 | 22:25 | 52:14 | 55:5 |
| passive | 23:22 | 14:13 | 61:8 | proja... | 23:1,9 | 53:3,6 | 56:21 |
| 31:21 | 28:11 | 14:21 | present | 20:9 | 23:11 | 53:21 | 56:22 |
| past | 29:11 | 17:17 | 2:18 | 22:11 | 23:14 | quite | rebuttal |
| 12:11 | 29:15 | 22:21 | 4:12 | projects | 24:3 | 32:24 | 6:12 |
| pay | 30:7 | 24:16 | prese... | 21:1 | 45:21 | quorum | 46:24 |
| 55:15 | 33:4 | 25:8 | 48:16 | Promo... | 47:15 | 4:24 | 47:3 |
| PEAR2:2 | 36:21 | 27:19 | prese... | 3:14 | 52:5 | _____ | 48:1,2 |
| penet... | 39:14 | 27:21 | 48:15 | 9:23 | 57:15 | R | recall |
| 41:10 | 39:16 | 28:5 | presu... | 12:4 | putting | R1:7,7 | 5:15 |
| people | 40:9 | 28:10 | 56:4 | 17:17 | 37:13 | 9:15 | 5:23 |
| 28:17 | 50:4 | 34:21 | presumed | proofs | 45:20 | 9:15 | 6:6,10 |
| 29:19 | physi... | 30:13 | 39:19 | 48:19 | 48:6 | 9:15 | 7:11 |
| 29:19 | 23:14 | 40:1 | pretty | 51:1 | p.m1:14 | 16:18 | 7:23 |
| 29:21 | 33:24 | policies | 22:17 | 51:25 | 4:3 | 16:18 | 10:8 |
| 30:19 | 35:13 | 17:10 | prevent | 54:9 | _____ | 49:23 | 42:11 |
| 31:19 | pick | 17:12 | 30:8 | 54:11 | Q | 49:23 | 46:19 |
| 33:1 | 29:21 | 17:16 | previous | proper | quali... | 49:23 | 46:20 |
| 35:7 | picking | 25:6 | 27:15 | 38:22 | 38:14 | Raise | 47:9 |
| 35:11 | 29:19 | 32:12 | princ... | property | 38:23 | 9:10 | 48:8 |
| perform | 29:22 | policing | 3:14 | 29:23 | quarter | raised | recal... |
| 13:24 | place | 22:20 | 9:23 | protect | 7:18 | 7:11 | 47:20 |
| 14:12 | 40:4 | 23:7 | 10:20 | 37:18 | question | 8:1,4 | 47:25 |
| 14:19 | 40:15 | policy | 12:4 | prote... | 11:20 | range | 49:10 |
| 29:15 | planning | 3:17 | 17:16 | 25:19 | 12:25 | 21:5 | receipt |
| 40:2 | 7:21 | 10:3 | 27:23 | provide | 13:7 | 21:11 | 55:9 |
| 52:15 | please | 10:18 | printed | 32:18 | 13:15 | 36:2 | 56:2 |
| perfo... | 9:7,10 | 25:9 | 18:24 | 39:10 | 13:20 | 36:15 | 56:13 |
| 25:19 | 11:4 | 25:10 | prior | 47:17 | 14:10 | 36:17 | 58:19 |
| perfo... | 28:16 | 25:15 | 17:3 | 54:20 | 16:17 | 36:17 | receive |
| 29:14 | 32:18 | 25:20 | 27:9 | provided | 28:22 | ranged | 17:19 |
| 40:1 | pleasure | 26:4 | 53:6 | 10:5 | 34:13 | 44:23 | 58:23 |
| period | 13:12 | 27:17 | 56:21 | 10:11 | 39:10 | ranging | recei... |
| 42:23 | Pledge | 27:22 | probable | provides | 39:12 | 12:18 | 59:5 |
| 47:25 | 4:7,9 | pool | 19:13 | 50:4 | 39:19 | rather | recently |
| 56:1 | pocket | 30:1 | probably | public | 39:23 | 10:6 | 14:7 |
| permi... | 22:24 | portion | 48:22 | 25:19 | 41:3 | 34:10 | 30:2 |
| 46:20 | point | 54:15 | problem | 38:4 | 43:2 | 34:11 | 30:23 |
| 59:15 | 4:25 | position | 26:3 | 38:10 | 47:7 | RE1:7 | recess |
| permi... | 8:24 | 11:20 | 57:11 | 39:18 | 50:10 | reach | 49:13 |
| 37:17 | 19:19 | 17:4 | problems | 40:5 | 51:4 | 21:7 | 49:15 |
| 37:18 | 23:16 | 24:4,9 | 36:3 | 61:3 | 51:13 | 23:18 | 49:16 |
| person | 33:1 | possible | Proce... | 61:23 | 52:7,8 | 36:23 | 54:5 |
| 21:2 | 37:25 | 20:1 | 19:12 | publi... | 53:19 | 36:24 | recited |
| 21:10 | 39:8 | possibly | 48:23 | 15:7 | quest... | read | 4:9 |
| 21:25 | 53:16 | 30:18 | 49:5 | publi... | 25:4 | 19:23 | recol... |
| 23:17 | poked | 36:25 | proceed | 9:24 | quest... | 25:14 | 6:17 |
| 23:22 | 32:25 | preci... | 47:23 | pull | 50:25 | 26:21 | 6:24 |
| 32:21 | police | 50:25 | 54:17 | 16:4 | 53:18 | 27:6 | record |
| 32:23 | 2:9 | Prefe... | 58:2 | 23:18 | quest... | 41:23 | 5:2 |
| 36:23 | 3:14 | 1:3 | proce... | pulled | 13:12 | 42:2 | 7:7 |
| 40:8 | 3:16 | 15:5 | 54:22 | 45:10 | 16:12 | 52:8 | 11:4 |
| Peter | 5:6 | 41:21 | proce... | purpose | 22:19 | 56:25 | 16:10 |
| 2:12 | 9:23 | 50:3 | 55:3 | 48:4 | 34:8 | 59:13 | 19:8 |



| | | | | | | |
|---|---|---|---|---|---|---|
| 22:18 | relying | 34:22 | 10:23 | same | 41:7,8 | session | 38:17 |
| 25:14 | 38:7 | requires | 12:12 | 42:21 | 41:16 | 7:10 | 38:18 |
| 26:23 | 39:13 | 21:9 | 19:7 | 43:4,6 | 57:20 | 7:19 | 39:14 |
| 27:7 | remain | 36:21 | 43:8 | 43:7 | 58:4 | 8:7 | 39:20 |
| 32:5,7 | 21:13 | rescue | 43:25 | 45:23 | 58:13 | set | 40:10 |
| 32:8,9 | remai... | 28:25 | 45:23 | 52:1 | 58:22 | 10:10 | 45:4,8 |
| 32:10 | 7:2 | 29:25 | 49:8 | sanct... | 58:25 | 50:16 | situa... |
| 36:1 | remove | research | 58:9 | 14:8 | 59:2 | 58:11 | 30:11 |
| 39:21 | 33:24 | 17:23 | ripping | sandp... | 59:13 | 58:15 | 31:8 |
| 49:18 | 35:13 | 17:25 | 30:5 | 51:9 | 59:21 | 58:21 | 32:12 |
| 52:21 | removed | 18:10 | risk | sat 51:8 | 59:4 | 59:4 | 33:17 |
| 52:22 | 11:9 | resea... | 38:4 | satis... | 19:17 | 59:16 | 33:20 |
| 53:12 | 35:10 | 18:1 | 38:11 | 54:8 | 22:23 | 61:16 | 39:4 |
| 54:4 | reope... | reserve | 39:17 | 54:10 | 30:20 | Seven | six 57:8 |
| redirect | 48:19 | 16:16 | 40:5 | saw 17:1 | 31:19 | 58:22 | 57:16 |
| 51:5 | 51:1 | reser... | 40:16 | 45:19 | 58:1 | Seymour | 58:4 |
| 51:19 | 51:25 | 5:15 | 40:18 | says | 59:11 | 2:24 | 59:11 |
| reduced | repaired | 5:22 | road | 18:25 | seen | 4:20 | skin |
| 61:7 | 42:17 | resis... | 1:16 | 19:25 | 18:11 | 4:21 | 41:8 |
| refer | repeat | 23:22 | 28:8 | scale | 18:12 | 58:11 | 41:12 |
| 12:20 | 35:25 | 23:22 | 34:15 | 20:2 | 19:1 | 58:19 | 41:14 |
| 25:21 | rephrase | 25:17 | roads | scene | 35:23 | 58:24 | some 7:6 |
| 27:24 | 29:5,9 | resort | 15:25 | 30:20 | self-... | 59:1,8 | 7:6 |
| refer... | 34:17 | 37:24 | Robert | 30:24 | 19:4 | 59:16 | 14:1 |
| 12:7 | 34:19 | respect | 2:8,19 | 32:20 | sense | 59:20 | 14:14 |
| 16:13 | 39:22 | 33:10 | 3:4 | scenes | 45:23 | short | 19:17 |
| 22:10 | replaced | 35:2 | roll | 33:14 | sent | 22:7 | 22:1 |
| refer... | 42:18 | 36:4,4 | 4:10 | schedule | 24:18 | 47:22 | 22:17 |
| 19:13 | repla... | 37:4,6 | Rollin | 56:4 | separate | 49:12 | 22:18 |
| referred | 42:19 | respects | 2:21 | 56:14 | 32:2 | Short... | 23:20 |
| 11:25 | report | 49:6 | Roman | 56:16 | 42:20 | 61:22 | 23:20 |
| 17:4 | 27:10 | respond | 25:13 | 56:19 | Septe... | shoulder | 23:25 |
| 22:22 | reporter | 13:11 | 26:22 | 57:6 | 57:4,5 | 31:5 | 26:12 |
| 27:17 | 1:18 | 39:5 | Ron 11:5 | scholar | seque... | show | 28:16 |
| refused | 55:17 | response | Ronald | 53:14 | 11:7 | 32:5 | 29:15 |
| 35:12 | 55:24 | 12:19 | 2:20 | scuffle | sergeant | 53:1 | 29:17 |
| regard | 61:22 | 13:15 | room | 40:9 | 2:20 | shown | 30:16 |
| 38:23 | repre... | 47:15 | 11:9 | second | 3:4 | 28:18 | 32:18 |
| regar... | 11:14 | 59:25 | 11:17 | 11:19 | 5:18 | side | 33:3,5 |
| 27:14 | repre... | rest | Roughly | 12:11 | 6:9,16 | 15:25 | 33:10 |
| 52:12 | 16:21 | 53:9 | 59:1 | 20:24 | 6:22 | 57:18 | 35:4 |
| Regina | request | restr... | rule | 21:23 | 6:23 | sides | 37:8 |
| 1:18 | 7:15 | 43:15 | 10:10 | 27:6 | 7:1,4 | 55:2,4 | 43:6,7 |
| 61:21 | 7:23 | result | 26:13 | 32:4 | 7:16 | 56:24 | 43:9 |
| regular | 13:24 | 36:7 | 48:13 | 55:9 | 7:21 | Silver | 46:24 |
| 42:25 | 24:5 | 38:18 | ruled | seconds | 8:17 | 1:16 | 49:6 |
| 43:3 | 55:1 | 39:2 | 5:25 | 16:9 | 9:4,5 | similar | 52:12 |
| relates | 59:8 | return | 8:21 | 21:21 | 11:21 | 20:23 | 53:15 |
| 15:10 | require | 43:20 | rules | Section | 13:7 | 21:8 | 58:7 |
| relev... | 37:8 | re-cross | 10:10 | 19:10 | 16:17 | 27:14 | 59:11 |
| 14:17 | 39:10 | 51:19 | 19:11 | Sedlak | 17:5 | simple | somebody |
| 18:16 | 40:12 | Rick | 48:11 | 2:22 | 18:21 | 35:5 | 23:8 |
| 19:10 | 41:8 | 2:24 | 48:24 | 4:12 | 19:22 | since | 30:8 |
| 19:17 | required | right | run 35:8 | 4:15 | 28:3,7 | 11:23 | 31:18 |
| 26:12 | 27:10 | 5:11 | ruptured | 4:17 | 34:10 | 28:2,4 | 34:4 |
| relevant | 28:12 | 5:15 | 42:17 | 4:19 | 41:20 | 53:14 | 37:19 |
| 13:18 | 28:19 | 5:22 | ___ | 4:19 | serious | site | 47:8 |
| 14:18 | 29:11 | 7:10 | S | 4:22 | 37:19 | 13:5 | someone |
| 15:24 | 29:14 | 9:18 | s 3:12 | 10:7 | 40:11 | situa... | 33:24 |
| 26:9 | 30:13 | 8:18 | 9:15 | 10:12 | serves | 31:24 | 35:18 |
| 49:1 | 31:11 | 9:10 | 49:23 | 10:24 | 5:10 | 35:17 | 37:15 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 52:19 | 19:7,9 | stated | 35:16 | 30:1 | 15:13 | termed | 36:10 |
| 57:20 | 25:23 | 36:6 | 35:20 | sworn | 15:19 | 42:4 | 40:3 |
| somet... | 26:2 | States | 36:18 | 9:9,17 | 16:4 | termi... | 46:9 |
| 17:3 | 26:11 | 13:4 | 36:19 | 49:25 | 32:21 | 13:21 | 47:21 |
| 18:24 | 26:19 | 17:11 | 36:21 | 61:12 | 38:16 | termi... | 53:9 |
| 23:9,9 | 32:3 | statue | 37:21 | system | 44:18 | 50:18 | 61:12 |
| 44:23 | 32:10 | 15:10 | 38:3,7 | 21:24 | tapes | termi... | thems... |
| 57:14 | 34:19 | 52:9 | 38:8 | 41:14 | 57:23 | 14:21 | 22:2 |
| somewhat | 39:6 | statute | 38:24 | 41:15 | target | 15:4 | 30:8 |
| 14:24 | 39:22 | 52:13 | 39:11 | | 36:16 | 52:12 | 31:22 |
| 49:9 | 41:1,7 | stay | 39:13 | T | taser | termi... | theory |
| sort | 41:17 | 15:18 | 39:14 | T 3:12 | 20:18 | 52:13 | 12:15 |
| 14:14 | 46:15 | steno... | 39:19 | 9:15 | 20:25 | testi... | thick |
| 23:25 | 47:10 | 61:9 | 39:23 | 49:23 | 21:12 | 6:16 | 30:23 |
| 33:4 | 47:16 | step | subduing | table | 21:17 | 9:17 | thing |
| sorts | 47:24 | 57:2 | 26:25 | 5:3 | 22:4 | 27:14 | 31:25 |
| 15:14 | 49:2 | still | subject | tactics | 28:13 | 44:16 | 31:25 |
| 15:23 | 49:14 | 8:8 | 21:17 | 14:3 | 32:14 | 49:25 | things |
| special | 49:17 | 18:17 | 48:23 | 24:12 | 35:16 | testi... | 8:25 |
| 4:6 | 53:11 | 49:20 | subjects | 24:17 | 35:20 | 46:25 | 15:14 |
| specific | 53:13 | 59:16 | 12:18 | 24:24 | 35:23 | testify | 15:24 |
| 18:2 | 53:22 | stop | 28:20 | 25:22 | 36:1,5 | 6:23 | 17:21 |
| 27:11 | 54:6 | 23:1 | subse... | 26:23 | 36:6 | 38:14 | 23:20 |
| 36:18 | 54:10 | 29:12 | 6:4 | 26:24 | 37:22 | 52:7 | 29:18 |
| 36:19 | 54:14 | 32:3 | subst... | 27:8 | 38:24 | testi... | 37:16 |
| Speci... | 55:11 | 32:21 | 14:11 | 27:18 | 41:8 | 34:10 | 45:2 |
| 25:21 | 56:6 | 35:2,5 | subst... | 37:25 | 44:18 | testi... | 49:7 |
| spectrum | 56:20 | 35:19 | 15:1 | take | 44:19 | 7:2,5 | think |
| 22:5 | 57:8 | stops | suggest | 9:18 | 45:20 | 8:8,9 | 5:21 |
| specu... | 57:13 | 28:17 | 34:12 | 22:24 | Tasers | 8:11 | 7:17 |
| 39:3 | 57:22 | 33:22 | sugge... | 23:14 | 36:2 | 9:4,19 | 8:3,24 |
| specu... | 58:1,5 | 34:23 | 29:7 | 23:21 | taught | 11:10 | 11:8 |
| 38:16 | 58:10 | street | suicide | 23:24 | 27:1 | 27:15 | 14:4 |
| spent | 59:3 | 43:18 | 30:9 | 24:1,6 | tear | 38:25 | 14:17 |
| 15:12 | 59:10 | 43:23 | suitable | 24:9 | 30:2 | 46:25 | 16:6 |
| SPERLING | 59:18 | 43:25 | 35:24 | 24:25 | techn... | techn... | 19:12 |
| 2:2 | 59:22 | stricken | superior | 33:4 | 23:19 | 45:1 | 19:14 |
| Sprained | 59:24 | 53:7 | 24:10 | 36:25 | 24:18 | 51:15 | 19:19 |
| 42:9 | 60:1 | strive | super... | 40:8 | 32:13 | 51:16 | 26:5,7 |
| St 2:23 | stand | 57:16 | 35:1 | 42:4 | 33:11 | 52:18 | 26:7,9 |
| 4:5,10 | 26:6 | struc... | super... | 49:12 | 33:19 | 53:5 | 29:6 |
| 4:22 | 51:2 | 31:4 | 2:23 | 51:25 | 35:2 | 54:11 | 34:9 |
| 4:23 | standard | stumps | 59:9 | 54:17 | 37:5 | 54:13 | 34:13 |
| 5:10 | 49:15 | 31:1 | supply | 58:17 | 38:5,8 | 61:5,7 | 34:14 |
| 5:21 | standing | stun | 55:5 | taken | 40:2,4 | 61:10 | 39:2,7 |
| 5:25 | 53:20 | 6:23 | Support | 61:5 | tell | text | 42:7 |
| 7:20 | stands | 7:5,7 | 59:21 | takes | 9:11 | 12:13 | 46:22 |
| 7:24 | 18:18 | 8:8,10 | sure 8:5 | 57:13 | 23:8 | thank | 48:12 |
| 8:2,15 | start | 14:2,6 | 19:1 | take-... | 23:10 | 10:12 | 48:24 |
| 8:19 | 16:4 | 14:10 | 32:17 | 23:25 | 61:6 | 11:1 | 49:2 |
| 8:23 | starting | 14:11 | 37:9 | taking | ten | 20:11 | 52:6 |
| 9:7,8 | 32:19 | 15:1,8 | surge... | 24:24 | 15:18 | 40:24 | 56:10 |
| 10:14 | starts | 15:13 | 42:16 | talk | 55:12 | 41:16 | 57:18 |
| 10:20 | 57:5 | 15:23 | surgery | 15:21 | tendon | their | 58:6 |
| 10:22 | state | 20:18 | 42:12 | 15:23 | 42:17 | 19:2 | Thomas |
| 11:11 | 11:4 | 21:8 | 43:5 | 18:15 | tends | 24:3 | 2:18 |
| 12:24 | 14:9 | 21:17 | sustain | talked | 21:6 | 29:13 | though |
| 13:14 | 17:13 | 22:3 | 53:16 | 6:4 | term | 29:14 | 18:13 |
| 14:23 | 19:1,3 | 28:13 | swear | 15:21 | 43:3 | 31:23 | 49:3,3 |
| 16:8 | 61:1 | 32:14 | 9:11 | talking | 50:11 | 34:22 | thought |
| 16:11 | 61:18 | 33:3 | swimming | 13:8 | 50:23 | 35:8,8 | 50:15 |
| | | | 13:8 | | | 36:9 | |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 52:15 | 18:25 | 56:14 | 51:8 | 32:15 | 36:23 | 15:5 | 54:16 |
| **threa...** | **today** | 56:25 | 57:3 | **until** | 38:2 | 15:10 | 55:23 |
| 37:20 | 13:6 | 57:9 | 58:15 | 6:15 | 38:25 | **violence** | **weak** |
| **three** | Tom 5:3 | 58:12 | 58:16 | 16:5 | 39:23 | 33:16 | 37:10 |
| 12:12 | **tomorrow** | 61:10 | Twp 3:16 | 16:16 | 40:3 | **vocal** | **weapon** |
| 21:21 | 55:14 | **trans...** | **type** | **use** 14:2 | **utilize** | 28:18 | 20:8 |
| 21:22 | **tonight** | 57:17 | 17:25 | 14:2,6 | 19:15 | **voir** 3:6 | 27:9 |
| 51:3 | 15:19 | **trans...** | **typical** | 14:10 | U.S 15:6 | 12:22 | 27:12 |
| 56:13 | **top** | 21:3 | 35:16 | 14:11 | 17:9 | **voltage** | 45:21 |
| **through** | 12:12 | **trans...** | | 15:2,8 | | 21:4 | **weapons** |
| 17:23 | 19:3 | 34:5 | **U** | 15:22 | **V** | **Volts** | 20:13 |
| 21:5 | **township** | **Treas...** | U1:7 | 18:14 | V 16:18 | 44:25 | 46:9 |
| 21:22 | 1:5,15 | 2:24 | **unable** | 18:19 | **various** | | **web** 13:5 |
| 24:16 | 2:21 | **treas** | 22:2 | 19:25 | 17:13 | **W** | 16:4 |
| 30:23 | 2:22 | 30:25 | **under** | 20:2,7 | 18:8 | W 9:15 | **Wedne...** |
| 31:6 | 2:24 | **trial** | 11:15 | 23:3,6 | 23:20 | **wait** | 1:13 |
| 44:12 | 2:25 | 57:4 | 19:11 | 23:6 | 24:8 | 45:1 | 4:2 |
| **time** | 5:2 | **true** | 19:23 | 23:19 | 24:25 | **walk** | **week** |
| 1:14 | 7:3 | 61:9 | 22:6 | 24:9 | 26:25 | 45:24 | 17:2,3 |
| 4:5 | 10:2 | **trustee** | 22:24 | 24:13 | 44:14 | **wall** | **weeks** |
| 5:16 | 10:17 | 2:21 | 23:3 | 25:20 | **vehicle** | 23:24 | 14:6,7 |
| 5:20 | 13:22 | 2:24 | 23:10 | 27:9 | 34:3,6 | **want** | 42:22 |
| 5:21 | 15:9 | 2:25 | 24:11 | 27:12 | 35:13 | 13:12 | 51:3,8 |
| 7:12 | 15:22 | 32:5 | 25:13 | 27:14 | **vehicles** | 16:2 | 56:13 |
| 7:19 | 17:5,9 | **truth** | 25:22 | 28:13 | 35:11 | 23:14 | 57:8 |
| 15:12 | 17:15 | 9:11 | 26:22 | 28:19 | **verbal** | 23:15 | 57:16 |
| 15:13 | 18:6,9 | 9:12 | 32:12 | 30:7 | 20:7 | 25:7 | 58:4 |
| 17:1 | 25:8 | 9:12 | 32:15 | 31:12 | 22:15 | 35:10 | 58:12 |
| 21:19 | 27:21 | 48:17 | 35:9 | 32:12 | 22:22 | 45:2 | 58:14 |
| 42:9 | 44:3 | 61:6 | 35:21 | 32:14 | 23:5 | 46:19 | 58:15 |
| 42:21 | 46:8 | **try** 56:7 | 38:9 | 33:2,3 | **verbally** | 56:8 | 58:16 |
| 43:11 | 47:12 | 57:16 | 40:13 | 33:10 | 13:25 | 56:23 | 58:16 |
| 46:18 | 55:2,4 | **trying** | 48:11 | 33:19 | **very** | 57:22 | 58:19 |
| 47:1,6 | **traffic** | 8:25 | 48:13 | 35:1 | 14:18 | 58:11 | 58:22 |
| 50:11 | 28:17 | 15:9 | 49:20 | 35:16 | 52:25 | **wanted** | 58:24 |
| 52:2,9 | 29:12 | 18:1 | 51:12 | 35:20 | 52:25 | 32:24 | 58:25 |
| 54:1 | 32:21 | 33:1 | 51:21 | 53:3,3 | 53:3,3 | **wants** | 59:5 |
| 54:12 | 33:22 | 51:20 | 54:17 | 36:1,4 | **veteran** | 15:22 | 59:11 |
| 54:16 | 34:23 | 52:4 | **under...** | 37:1,2 | 50:7 | 18:15 | 59:12 |
| 55:5,8 | 35:2,5 | 56:21 | 8:24 | 37:5 | 50:18 | 57:20 | **weigh** |
| 56:1 | 35:19 | 57:15 | 17:12 | 37:14 | **Veterans** | **warrants** | 49:7 |
| 56:23 | **trained** | 59:4 | 31:22 | 37:15 | 1:3 | 35:7,8 | **well** |
| 57:1 | 18:3 | **turn** | 43:2 | 38:5,8 | 15:5 | **Washt...** | 30:22 |
| 57:14 | 24:12 | 16:5 | 49:19 | 39:3 | 41:21 | 61:2 | 31:15 |
| 57:16 | **training** | 23:13 | 53:1 | 39:11 | 50:3 | 61:18 | 37:7 |
| 58:2,7 | 24:19 | 37:2 | 57:14 | 39:13 | 50:17 | 61:23 | 40:23 |
| 58:21 | 25:1 | **turns...** | **under...** | 39:16 | **victim** | **wasn't** | 43:20 |
| 59:19 | 27:2,2 | 22:25 | 5:14 | **used** | 31:21 | 28:21 | 44:9 |
| **times** | 27:5 | 23:10 | 7:2 | 20:22 | **video** | 28:22 | 45:21 |
| 29:20 | 38:25 | **turning** | 25:3 | 27:3,8 | 57:23 | 37:23 | 45:22 |
| 29:24 | 39:1 | 22:23 | 41:11 | 37:12 | **video...** | **wattage** | 52:6 |
| 31:16 | **trans...** | **twist** | 47:2 | 37:22 | 56:3 | 44:19 | 53:19 |
| 32:25 | 61:9 | 24:3 | 47:11 | 39:15 | **video...** | 44:20 | **were** |
| 33:21 | **trans...** | **two** 9:20 | 59:10 | 39:20 | 54:24 | **watts** | 5:11 |
| 36:14 | 54:22 | 21:1 | **United** | 40:13 | 57:17 | 21:4,5 | 5:14 |
| 43:25 | 54:23 | 25:13 | 13:4 | 45:12 | 57:21 | **way** 6:17 | 14:9 |
| 44:14 | 55:9 | 25:22 | 17:11 | **useless** | **vigorous** | 12:19 | 17:21 |
| **Tina** | 55:12 | 31:19 | **unless** | 36:10 | 28:11 | 17:14 | 17:25 |
| 1:18 | 55:19 | 36:6 | 18:25 | **uses** | 30:12 | 30:19 | 18:3 |
| 61:21 | 55:21 | 42:20 | 20:3 | 40:19 | 31:9 | 30:24 | 18:10 |
| **title** | 56:2 | 51:3,7 | **unrea...** | **using** | **violates** | 31:1,3 | 25:4 |

| | | | |
|---|---|---|---|
| 28:5 | 49:24 | **Y** | 1975 | 6:00 |
| 39:7 | 61:4,8 | Y 1:7,7 | 11:24 | 1:14 |
| 39:12 | 61:16 | **Yeah** | 28:2 | 4:3 |
| 42:6 | **witne...** | 43:6 | 1982 | 6:50 |
| 42:19 | 6:7,11 | **years** | 28:4 | 32:6 |
| 42:21 | 46:17 | 38:13 | 1986 | 611 |
| 43:12 | 46:23 | 38:21 | 42:7 | 48:13 |
| 43:22 | 47:5 | **yeste...** | 42:10 | 665-4441 |
| 44:6 | 48:15 | 10:5 | 1992 | 2:6 |
| 48:24 | 53:23 | **Young** | 24:21 | |
| 59:8 | 54:1 | 2:16 | 1994 | **7** |
| 50:19 | **woods** | 2:19 | 44:12 | 7:30 |
| 52:25 | 30:23 | 5:9 | 44:12 | 60:2 |
| **wheel...** | 30:24 | 13:21 | | 734 2:6 |
| 50:15 | **words** | 16:21 | **2** | 2:15 |
| **whereof** | 7:24 | 24:12 | 20 21:6 | 769-4500 |
| 61:16 | 52:5 | 24:20 | 20-some | 2:15 |
| **while** | **work** | 50:9 | 38:13 | |
| 14:15 | 14:3 | 50:20 | 200,000 | **8** |
| 21:10 | 37:11 | 52:15 | 21:5 | 8 42:22 |
| 36:21 | 42:23 | **Young's** | 44:24 | |
| 42:14 | 43:12 | 14:17 | 2002 | **9** |
| **whole** | 43:14 | 15:4 | 1:13 | 9 3:15 |
| 9:11 | 43:17 | | 4:2 | 3:17 |
| 17:18 | 43:18 | **$** | 5:1 | 9th 57:4 |
| 23:8 | 43:21 | $50,000 | 24 2:4 | 57:5 |
| 51:20 | 43:23 | 44:24 | 24.275 | |
| **William** | 44:1,6 | | 19:11 | |
| 2:23 | 44:9,9 | **1** | 49:4 | |
| 2:25 | 56:3,4 | 1 44:12 | 26 38:21 | |
| **willing** | 56:14 | 10 7:18 | 28.401 | |
| 55:15 | 56:15 | 10:00 | 10:10 | |
| **winds...** | **working** | 7:18 | | |
| 30:2,5 | 43:10 | 10 11:16 | **3** | |
| **wire** | **works** | 11 3:5 | 30 21:6 | |
| 21:1,6 | 56:19 | 14 1:13 | 36:2 | |
| 36:7 | 56:24 | 4:2 | 56:9 | |
| **wires** | **worth** | 15 10:8 | 30th | |
| 21:12 | 38:21 | 10:9 | 59:2,6 | |
| 21:13 | **wouldn't** | 16 3:6 | 300,000 | |
| **wish** | 45:24 | 3:14 | 21:5 | |
| 54:25 | **wrestle** | 9:22 | 31 5:1 | |
| **withdraw** | 24:1 | 10:7 | 31st | |
| 50:14 | 37:1 | 10:20 | 5:12 | |
| **withdrew** | **Wright** | 10:24 | | |
| 7:15 | 2:4 | 12:6 | **4** | |
| **witness** | **writing** | 16:23 | 40 56:8 | |
| 3:2 | 13:25 | 17:19 | 41 3:7 | |
| 5:19 | 61:7 | 26:1,6 | 412 2:13 | |
| 6:12 | **written** | 26:15 | 48 104 | |
| 9:16 | 18:8 | 27:24 | 2:14 | |
| 12:23 | **wrong** | 17 3:16 | 48 105 | |
| 12:25 | 6:15 | 10:1 | 2:5 | |
| 13:12 | 37:16 | 10:19 | 49 3:10 | |
| 16:12 | | 10:24 | | |
| 41:11 | **X** | 25:8 | **5** | |
| 46:12 | X 3:1,12 | 26:1,4 | 50,000 | |
| 47:3,5 | **x-amount** | 26:17 | 21:4 | |
| 47:17 | 56:12 | 26:20 | | |
| 47:18 | | 19 42:7 | **6** | |
| 49:21 | | | | |



GREEN OAK TOWNSHIP BOARD
FINDINGS AND OPINION

Re:    Larry Young - Green Oak Township

The current situation involves a request presented by Larry Young, to be returned to full-time employment with the Green Oak Township Police Department.

In a training accident in August of 1992, Mr. Young suffered an injury which prevented him from returning to full-time duty as a Green Oak Township police officer. He applied for and obtained workers' compensation at the end of 1992 and that situation continued until October of 2001, at which time the Workers' Compensation Bureau of Michigan discontinued benefits being paid to Mr. Young.

In light of the fact that Mr. Young had served three years in the United States Navy from 1967 through 1970 during a time of national conflict, his situation properly came under the purview of the Michigan Veterans' Preference Act. Under the terms of that statute, Mr. Young was afforded a hearing before the Green Oak Township Board to determine whether the recommendation of the Township Police Chief to terminate Mr. Young would be approved or denied.

The matter came before the Green Oak Township Board in a set of two hearings, the first being held on July 31, 2002 and the second on August 14, 2002. Mr. Young was represented by Attorney Peter J. Osetek and the Township's position was argued by Attorney Melvin Muskovitz.

Two witnesses were presented for consideration by the Township Board, the first being Green Oak Township Police Chief Robert Brookins and the second Green Oak Township Police Sergeant Robert Crowe.

Seventeen exhibits were received and considered by the Board in reaching its conclusion.

Evidence presented pointed out that Mr. Young last performed police department duties sometime in 1992 after his mentioned accident. Workers' compensation benefits were afforded Mr. Young for approximately nine years after his accident up through and including October of 2001. The Workers' Compensation Bureau in rendering an opinion which resulted in termination of the benefits testified as follows:

> "I find the Defendant has established by a preponderance of the evidence that Plaintiff no longer suffers a work-related disability and that any problems he currently suffers are the result of degenerative condition not related to the work he was doing at the time of his injury. . ." (Transcript, p. 24)

In May of 2001, Mr. Young, in a letter sent to the Police Chief, requested that he be allowed to return to duty as a police officer under defined limited conditions. Obviously, based on his physical situation at the time, he felt that he would be unable to perform the totality of duties required of police officers in Green Oak Township and suggested that he be limited in his responsibilities because of that situation.

Although much testimony was presented on a number of issues in this matter, it is the opinion of the Green Oak Township Board that the central question being presented is whether or not Mr. Young is protected by the terms of the Veterans' Preference Act (MCLA 35.401) and consequently is the Township obligated to return him to the position of full-time Green Oak Township police officer?

There is no doubt that Mr. Young comes under the definition of individuals protected by the mentioned Veterans' Preference Act.

That legislation in pertinent part, states that no qualified veteran shall be denied employment except for the existence of ". . .extortion, conviction of intoxication, conviction of felony or incompetency. . ."

The Act goes on to state that "age, loss of limb, or other physical impairment which does not, in fact, incapacitate shall not be deemed to disqualify. . ."

Nothing in the evidence presented indicated that Mr. Young was or had been involved in extortion, conviction of intoxication, or conviction of a felony. In relation to "incompetency", Chief Brookins, on cross-examination, testified that it was his opinion that Mr. Young was not incompetent.

The application of the issue of competency to the position of police officer was of main concern to the Township Board.

Ample testimony was presented as to the requirements which must be met in order to be employed as a police officer in the State of Michigan and, for that matter, requirements for being re-certified as a police officer if certification had been removed or had lapsed.

Evidence was presented that Mr. Young's certification as a police officer had, in fact, expired and that it would be necessary for him to be re-certified.

Although some of the testimony on the issue of re-certification was in conflict, it was clear that that process would have to be directly addressed should Mr. Young be reemployed as a Green Oak Township police officer.

Presented testimony also made it amply clear that physical competency is a mandatory component of functioning as a certified police officer.

Based on the statements made by Mr. Young himself in his request to be returned to employment with limited duties and considering the findings of the Workers' Compensation Bureau in recognizing a continuing physical problem of a degenerative nature, there is little doubt that Mr. Young's present physical situation would prevent him from returning to active duty as a Green Oak Township police officer with full physical capacity.

No evidence was presented in the hearing that would lead the Board to conclude that Green Oak Township has an active obligation to create a position which would match the present physical situation being experienced by Mr. Young.

In light of the described attributes which must be possessed by fully functioning police officers, it is the conclusion of the Board that the safety and welfare of not only the community but of Mr. Young himself must be directly addressed.

It is the opinion of the Green Oak Township Board that based upon testimony presented, Mr. Young is physically incompetent to return to full time police duties with the Township. The recommendation of the Township Police chief to terminate employment is hereby adopted.

_____ 1-8-03    _____ 1-8-2003

_____ 1/8/03    _____ 1-8-2003

_____ 1/8/03

_____ 1/8/03

ed States District Court
stern District of Michigan

**Summons**
In a
**Civil Action**

Civil Case

Judge: **99-73470**

JOHN FEIKENS

| Plaintiff name(s) | Defendant name(s) |
|---|---|
| LARRY YOUNG | GREEN OAK TOWNSHIP & CHIEF OF POLICE |

| Plaintiff's attorney, name and address | Name and address of defendant being served: |
|---|---|
| LANCE A. FERTIG (P27476)<br>10524 E. Grand River<br>Brighton, MIchigan 48116 | 8965 Fieldcrest -<br>Brighton, Michigan 48116 .<br><br>*Green Oak Township Police* |

To the defendant:

This summons is notification that YOU ARE BEING SUED by the above named plaintiff(s):

1. You are required to serve upon the plaintiff's attorney, name and address above, an answer to the complaint within ⟶20 days after receiving this summons, or take other actions that are permitted by the Federal Rules of Civil Procedure.

2. You must file with the Clerk of Court, the original and one copy of your answer within the time limits specified above.

3. Failure to answer or take other action permitted by the Federal Rules of Civil Procedure may result in the issuance of a judgment by default against you for the relief demanded in the complaint.

**John P. Mayer**
**Clerk of the Court**

By: _____
Deputy Clerk

(seal)

_____7/13/99_____
Date

(Over)

## RETURN OF SERVICE

### PERSONAL OR OTHER SERVICE

I, _____ served a copy of the summons and complaint upon

Name of server

_____ on _____ by one of the following methods:

Defendant's name                                        Date

(check one)

☐ Personally served the defendant at address _____

☐ Left copies at the defendant's usual place of abode with _____

_____ who resides

Name of person, address

therein and is of suitable age and discretion.

☐ Other (please specify): _____

Service fees:  Travel  $ _____  Service  $ _____  Total  $ _____

Declaration of Server: I declare under the penalty of perjury that the information contained in the Return of Service is true.

_____        _____

Date                          Signature of server, Server's address

Complete this section only if the defendant is being served by first class mail.

### Service by First Class Mail

I, _____ declare under the penalty of perjury that on _____

Name of server                                                         Date

I mailed a copy of the summons and complaint to _____

_____

Defendant's name, address _____

_____        _____

Date                          Signature of server, Server's address

### Notice to Defendant of Service by Mail

You are being served a copy of the summons and complaint pursuant to FRCP 4 (c) (2) (c) (ii):

1. You must sign and date the acknowledgment of service by mail and return one copy of the completed form to the sender within 20 days.

2. If you are served on behalf of a corporation, partnership etc., or if you are authorized to receive process on behalf of another person, you must indicate your relationship to the entity or your authority to receive process.

3. If you do not complete and return the form to the sender within 20 days, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons and complaint in any other manner permitted by law.

4. If you do complete and return this form, you (or the party on whose behalf you are being served) *must still* ANSWER the complaint within the time period specified on the summons. Failure to do so may result in a default judgment against you for the relief demanded in the complaint.

### Defendant's Acknowledgment of Service by Mail

I acknowledge that on _____, I received a copy of the summons and complaint in this matter.

Date

_____          _____          _____

Signature                               Date                    Address

_____          _____    _____    _____

(Relationship to entity/authority to receive service of process)    City      State      Zip code

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY YOUNG,
     Plaintiff,

vs

GREEN OAK TOWNSHIP, a Michigan
Municipal Corporation, and CHIEF OF
POLICE, individually, jointly
and severally,
        Defendants.

Case No. 99-

Hon.

*JOHN FEIKENS*

*MAGISTRATE JUDGE PEPE*

—————————————————————/
LANCE A. FERTIG (P27476)
Attorney for Plaintiff
10524 E Grand River
Brighton, Michigan 48116
—————————————————————/

There are/were other civil action between
these parties arising out of the same
transaction or occurrence as alleged in
this complaint, but they are not pending in
this court, nor has any such action been
previously filed and dismissed or transferred
after having been assigned to a Judge.

By: LANCE A. FERTIG

COMPLAINT FOR VIOLATION OF 1ST AMENDMENT RIGHTS
CONSPIRACY TO DEPRIVE OF 1ST AMENDMENT RIGHTS, VIOLATION OF
THE RULES AND REGULATIONS OF THE LAW ENFORCEMENT ADMINISTRATIVE ACT,
CONSPIRACY TO VIOLATE THE RULES AND REGULATIONS OF THE LEAA,
and HOSTILE WORK ENVIRONMENT

NOW COMES Plaintiff, LARRY YOUNG, by and through his retained legal counsel, LANCE A. FERTIG, of L.A. Fertig & Associates and for his Complaint against the Defendants, and each of them, states as follows:

    1.    Plaintiff, LARRY YOUNG, (hereinafter, Plaintiff), is a resident of the City of Brighton, County of Livingston, State of Michigan, and has been at all relevant times as to the allegations herein.

    2.    Defendant, GREEN OAK TOWNSHIP, (hereinafter, GREEN OAK), is a

Michigan Municipal Corporation licensed to do business in the State of Michigan and maintains an employing establishment known as "GREEN OAK TOWNSHIP POLICE DEPARTMENT", County of Livingston, State of Michigan and did so conduct itself as an employer in said city, county and state at all revellent times stated herein.

4.    That Co-Defendant, CHIEF OF POLICE, (hereinafter CHIEF) was and is responsible for making sure that no person's Civil Rights, and Due Process Rights in any way, shape, or form, will be, or have been violated or infringed upon.    However in this matter the Defendants knew that the Plaintiff's 1st Amendment Rights were being Violated as they applied to the Plaintiff, and that the Rules and Regulations of the LEAA were also being violated, and yet allowed it all to occur.  That the Defendants were fully aware, and permitted, the Plaintiff's Civil Rights, and Due Process Rights to be Violated, and allowed the Plaintiff to be constantly harassed and belittled, and forced to work in a Hostile Work Environment.

5. That all of the injuries sustained by Plaintiff occurred within the County of Livingston, State of Michigan.

6.    The damages suffered by Plaintiff are in excess of Seventy Five Thousand ($75,000.00) Dollars for which this Honorable court maintains jurisdiction.

WHEREFORE, Plaintiff prays for Judgment against the Defendants, and each of them in an amount in excess of Seventy Five thousand ($75,000.00) Dollars and for his attorney fees and costs so wrongfully sustained.

## COUNT I - VIOLATION OF THE PLAINTIFF'S 1ST AMENDMENT RIGHTS

7.    Plaintiff incorporates by reference each and every allegation as set forth in paragraphs 1 - 6 of this Complaint.

8.    In the Plaintiff began employment with the Defendant on the 15th

day of June, 1981, FULL TIME, and did so serve as an employee for the Defendants until the defendants, through their actions, inactions, and alleged conspiracy were successful in getting the Plaintiff terminated from his employment position in retaliation for the Plaintiff speaking his mind and standing up for his rights to organize, and in violation of his 1st Amendment Rights.   That Plaintiff was punished for speaking when he believed things were being done incorrectly and not according to the rules and regulations.

9.   That the Plaintiff's Civil Rights were violated because his termination from his employment was solely in retaliation for him exercising his 1st Amendments Rights of Free Speech, and Rights of Association.

10.   That the Defendants conspired, all of them between the Employers, Agents, and Supervisors, to deprive the Plaintiff of his 1st Amendment Rights, and conspired to Retaliate against the Plaintiff causing his wrongful discharge just for standing up for his rights and standing up when something was not being properly done and/or reported per Rules and Regulations.

11.   That the Defendants conspired to deprive the Plaintiff of his Civil Rights and 1st Amendment Rights, and Due Process Rights when he criticized the Department, Criticized the Departments procedures, criticized the departments, and Supervisors Violation of the Union Contract, criticized the Departments and the Supervisors violations of the various acts and regulations that they are bound by, as Police Officers, and was therefore subsequently passed over for promotions and fired for exercising his Free Speech Rights.

12.   During Plaintiff's service with Defendant, Plaintiff has

dutifully and faithfully performed his duties, work assignments, and was given periodic and annual pay raises, reviews as per the contract, and attempted to make sure that all proper procedures were being followed so that there would be no Violations of Citizen's rights.

13. That from time to time Plaintiff saw that the Defendants' either prepared or allowed to be filed inaccurate or false Police Reports, and engaged in violations of the Civil Rights of Citizens of Green Oak Township, which Plaintiff complained about to his superiors, and refused to sign off on inaccurate or misleading reports.

14. As a direct and proximate result of each of the Defendant's actions in terminating Plaintiff from his Employment position, and/or refusing to protect the Plaintiff with Defendant, Plaintiff has suffered and will continue to suffer damages in excess of Seventy Five thousand Dollars ($75,000.00), including, but not limited to:

a. Loss of promotion and promotional opportunity with the Police Department,

b. Loss of employment with Police Department,

c. Loss of pension rights and other employee benefits with the Police Department.

d. Loss of seniority rights & privileges with Police Department,

e. Loss of wages and earning potential in the future,

f. Loss of professional esteem and consequential damages to Plaintiff's career,

g. Extreme embarrassment, humiliation, inconvenience, extreme mental anguish, mental concern and loss of personal mental solicitude,

h.    Loss of all past and future employment,

i.    Considerable medical expenses.

j. Violation of Civil Rights and Violation of the 1st Amendment Rights.

WHEREFORE, Plaintiff prays for Judgment against the Defendants, and each of them in an amount in excess of Seventy Five thousand ($75,000.00) Dollars for the damages sustained and for his attorney fees and costs so wrongfully sustained.

## COUNT II - VIOLATION OF THE RULES AND REGULATIONS OF THE LAW ENFORCEMENT ADMINISTRATION ACT

15.    That plaintiff incorporates by reference each and every allegation as set forth in paragraphs 1 - 14 of this Complaint.

16.    Plaintiff had a contract of employment with Defendants, and each of them at all times relevant to the allegations stated herein through the Defendants' expressed and implied "just cause" policy for termination.

17.    One of the terms of the employment was an implied covenant of good faith and fair dealing which required that Defendants, and each of them, act in all respects in good faith toward Plaintiff's employment relationship.

18.    That the Defendant, GREEN OAK TOWNSHIP, receives Federal Funding, from various sources, and that funds are received from the LEAA and other Law Enforcement Federal Funding Agencies.

19.    That these Law Enforcement Administrative Act Funding Agencies have strict Rules and Regulations regarding promotions/minority representation/ Due Process/ Merit Raises and Merit Promotions in relations to individuals.

20.    That all of these provisions were violated by the Defendants and their agents in relation to the Plaintiff, in their refussal to protect the

Plaintiff, and their eventual termination of the Plaintiff.

21.    That the Plaintiff should have been promoted, however due to his exercise of his 1st Amendment Right to Free Speech, and desire to follow the Rules of the Police Union, he was repeatedly turned down and overlooked for any and all promotion(s) he was qualified for.

22.    That the Defendants were well aware of the fact that the Plaintiff was deserving of the Promotion(s), but because the Plaintiff would confront individuals if he felt they were not performing their job duties under the Rules and Regulations, and spoke up when he believed they were not doing something according to the Rules and Regulations, the Defendants rather than granting the Plaintiff his well deserved Promotion, they in turn conspired to get rid of him and violate their own Rules and Regulations in doing so, and the contractual rules and procedures regarding promotions. Defendants violated the ordinance regarding Promotiosn due to Plaintiff's exercise of hsi 1st Amendment Rights.

23.    That as a direct and proximate result of the Defendants' actions as described in the preceding paragraphs, Plaintiff suffers and will continue to suffer damages in excess of Seventy Five thousand ($75,000.00) Dollars, including, but not limited to:

a.    Loss of promotion and promotional opportunity with the Police Department,

b.    Constant threat of loss of employment with Police Department,

c.    Loss of pension rights and other employee benefits with the Police Department,

d.    Loss of Seniority Rights & privilges with Police Department,

e.    Loss of wages and earning potential, both presently and in

the future,

f.   Loss of professional esteem and consequential damages to
     Plaintiff's career,

g.   Extreme embarrassment, humiliation, inconvenience, extreme
     mental anguish, mental concern and loss of personal mental
     solicitude,

h.   Loss of all past and future employment,

i.   Considerable medical expenses.

WHEREFORE, Plaintiff prays for Judgment against the Defendants, and
each of them in an amount in excess of Seventy Five thousand ($75,000.00)
Dollars for the damages sustained and for his attorney fees and costs so
wrongfully sustained.

## COUNT III - HOSTILE WORK ENVIRONMENT

24.   Plaintiff incorporates by reference each and every allegation as
set forth in paragraphs 1 - 23 of this Complaint as if they were repeated
word for word herein.

25.   That the Plaintiff, as a Police Officer, was expected to,
required to, and authorized to comply with Green Oak Township Police
Department's "Rules" and "Regulations", however the Defendants, and the
Chief of Police did not follow said "Rules" and "Regulations", when they
conspired to terminate the Plaintiff, and in their actions, and inactions
placed the Plaintiff under a DUEL STANDARD and created a Hostile Work
Environment.

26.   That the Plaintiff was labled a trouble maker due to the fact
that he followed the Rules and Regulatiolns and then when others, such as
the Chief of Police did not follow the same rules and regulations and the
Plaintiff confronted him on same he was terminated.

27. That the Plaintiff shows up for work when he is scheduled to work, and performed the work he was scheduled to work, even with his Handicap and did not complain about same. That the Plaintiff was and is a dependable and good worker/Police Officer/Police Man for the Defendant.

28. That the Actions of the Defendants have created a Hostile Work Environment for the Plaintiff to have to work in, and has caused the Plaintiff to constantly look over his shoulder to make sure actions are not being taken against him.

29. That the Defendants are well aware of their actions and that their actions would and is creating a Hostile Work Environment for the Plaintiff. That said actions are making it extremely difficult for the Plaintiff to adequately perform his job duties since he is constantly being Discriminated against.

30. That the Defendants seem to believe that they can do whatever they want to their employees/Police Man and that their employees/Police Men just have to "lay there and take it" and if they "rook the boat" the Employer will make it more difficult for the employee/Police Man to remain an employee/Police Man.

31. That as a direct and proximate result of each of the Defendant's actions in the Malicious interference with the Plaintiff and his Job Plaintiff has suffered and will continue to suffer damages in excess of Seventy Five Thousand Dollars ($75,000.00) including but not limited to:

     a. Loss of promotion and promotional opportunity with the Police Department,

     b. constant threat of the loss of employment with the Police Department,

     c. Loss of pension rights and other employee benefits with

the Police Department,

d.  Loss of seniority with Police Department,

e.  Loss of wages and earning potential in the future,

f.  Loss of professional esteem and consequential damages to
    Plaintiff's career,

g.  Extreme embarrassment, humiliation, inconvenience, extreme
    mental anguish, mental concern, and loss of personal mental
    solicitude,

h.  Loss of all past and future employment,

i.  Considerable medical expenses

WHEREFORE  Plaintiff prays  for Judgment  against the  Defendants, and
each  of them  in an  amount  in excess  of Seventy  Five Thousand  Dollars
($75,000.00)  Dollars for the damages  sustained and for  his attorney fees
and costs so wrongfully sustained.

### TRIAL BY JURY IS HEREBY AFFIRMED

Respectfully Submitted,

LANCE A. FERTIG (P27476)

Dated:  6-7-99

I, LARRY YOUNG hereby state that the  allegations contained herein are true
and accurate  to the  best  of my  knowledge and  belief  and that  I  have
dutifully and diligently informed  my legal counsel of all  facts pertinent
for  proper representation  of my  cause as  stated against  the Defendants
named herein.

LARRY YOUNG, Plaintiff

Dated:  6-7-99

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF LIVINGSTON

LARRY YOUNG

     Plaintiff,

v.

GREEN OAK TOWNSHIP, a
Michigan Municipal Corporation,

     Defendant.

_____/

GREEN & GREEN
Philip Green (P14316)
Christine A. Green (P38413)
Carrick D. Craig (P39274)
475 Market Place, Ste. D
Ann Arbor, MI 48108
(313) 665-4036

_____/

95- 14387 -NO

Hon:

# JUDGE BURRESS

## COMPLAINT

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously field and dismissed or transferred after having been assigned to a Judge.

## PARTIES AND JURISDICTION

1.    Plaintiff is a resident of the Township of Hamburg, County of Livingston, State of Michigan.

1



2.      Defendant is a Michigan municipal corporation.

3.      The within action is brought pursuant to the Elliott-Larsen Civil Rights Act (MCL §37.2101 *et seq.*) and the Michigan Handicapper's Civil Rights Act (MCL §37.1101 *et seq.*) and this Court is specifically vested with jurisdiction over the matter.

4.      Plaintiff is 47 year old person having been born in May of 1948.

5.      Plaintiff currently suffers from a back condition which is unrelated to his ability to perform duties for the positions described in the substantive counts herein.

## GENERAL ALLEGATIONS

6.      In February of 1979 Plaintiff became employed as a Part-time Patrolman for the Green Oak Township Police Department.

7.      On June 15, 1981 Plaintiff became employed by Defendant as a Probationary Full-time Patrolman with the Green Oak Township Police Department, and in December of 1981 completed his probation and became a Patrolman.

8.      Plaintiff remained so employed until October of 1993 when he was instructed to turn in his departmental equipment and refrain from entering any police facility without prior

2

approval and was constructively discharged.

9.      During the course of his employment with the Green Oak Township Police Department Plaintiff performed his duties in a highly ethical and professional fashion, received numerous letters of appreciation from citizens and was an otherwise outstanding officer.

10.     On or about August 26, 1992 Plaintiff injured his back during a training exercise.

11.     Said injury had the effect of temporarily disabling Plaintiff from his duties as a patrolman from August 26, 1992 until August 31, 1992 when Plaintiff was allowed to return to work on light duty.

12.     Plaintiff was assigned light duty work by Chief Brookins with the specific exception that he would not be allowed to work any "holiday time" or "over time" because Chief Brookins did not want to pay someone extra for working light duty, and Plaintiff's requests for continuing training was denied because of his physical status and his filing of a workmens' compensation claim.

13      During the time he was assigned to light duty Plaintiff endured harassment and retaliation from co-employees and superiors because he had submitted a workmens' compensation claim and because he was disabled.

3

14.    In November of 1992 Chief Brookins articulated a specific plan to deprive Plaintiff of light duty in an effort to force him out of the department.

15.    On December 14, 1992 Plaintiff was again placed on disability at the direction of Chief Brookins, was approved by his doctor to go to light duty on April, 5 1993, but was denied such assignment at that time and has continually been denied the accommodation of light duty since that time.

## COUNT I -- FAILURE TO PROMOTE

16.    Plaintiff hereby incorporates paragraphs 1 through 15 of his Complaint as if set forth word for word.

17.    In January of 1993 a position for detective sergeant became available.  The position had been previously described as an "investigator" position but the description was deliberately modified and retitled after Plaintiff suffered his injury in an effort to disqualify Plaintiff from consideration for the position.

18.    Although Plaintiff was the best qualified for the position he was passed over with no testing for a less qualified and younger individual.

4

19.     Plaintiff grieved ● decision to his Union on January 18 ● 93 and the position was re-opened and a written and oral test were used to determine who would fill the position.

20.     Prior to the testing administration, Plaintiff requested that he be told how the testing would be scored, and Chief Brookings refused to provide the information.

21.     The primary sergeant's written examination was given on May 10, 1993, and Plaintiff finished as the top candidate in the objective written test.

22.     On May 17, 1993 Plaintiff was interviewed orally.

23.     The oral testers and/or Chief Brookings were aware of that Plaintiff had finished first on the written exam, and manipulated the oral exams so that Candidate Walters allegedly finished highest on the oral exam, and on the combined tests.

24.     The percentage of importance placed on the oral exam (75%) was deliberately designed to discriminate against plaintiff based on his age and his disability which was unrelated to his ability to perform those jobs duties in violation of the ELCRA and MHCRA.

25.     As a direct and proximate result of the Defendant's discriminatory practices, Plaintiff has suffered damages such as but not limited to loss of income, loss of benefits, loss of future income and benefits, loss of other accoutrements of employment, humiliation, outrage and

5

indignation, all of which are continuing in nature.

WHEREFORE, for all of the above reasons, Plaintiff respectfully requests that this Court grant him judgment in whatever amount the trier of fact deems just in excess of $10,000 along other such relief this Court deems is just and equitable in the premises.

## COUNT II -- ELCRA RETALIATION

26.     Plaintiff hereby incorporates paragraphs 1 through 25 of his Complaint as if set forth word for word.

27.     On May 24, 1993 Plaintiff was notified that he had finished second overall.

28.     On May 26, 1993 Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging that he had been denied the promotion to the Sergeant's position which was tested for in May of 1993.

29.     Following the filing of the Charge of Discrimination Plaintiff has been subjected to retaliation for having filed the Charge in ways such as but not limited to: being refused light duty work; having his activities unduly monitored; being subjected to unwarranted characterization of his work ethics; and denial of and improper charging for health care benefits and other benefits.

6

30.    Defendant continues to modify the duties of position with the police department in an effort to disqualify Plaintiff from said positions.

31.    As a direct and proximate result of the Defendant's discriminatory practices, Plaintiff has suffered damages such as but not limited to loss of income, loss of benefits, loss of other accoutrements of employment, humiliation, outrage and indignation, all of which are continuing in nature.

WHEREFORE, for all of the above reasons, Plaintiff respectfully requests that this Court grant him judgment in whatever amount the trier of fact deems just in excess of $10,000 along other such relief this Court deems is just and equitable in the premises.

## COUNT III - RETALIATION FOR FILING WORKER'S COMPENSATION CLAIM

32.    Plaintiff hereby incorporates paragraphs 1 through 31 of his Complaint as if set for with full effect.

33.    Following the filing of his worker's compensation claim Plaintiff was retaliated against for having filed said complaint in ways such as, but not limited to:  denial of reasonable accommodations;  denial of light duty assignments;    allowing harassing conduct toward and statements about Plaintiff;  and undue monitoring of his activities.

7

34. As a direct and proximate result of the Defendant's discriminatory practices, Plaintiff has suffered damages such as but not limited to loss of income, loss of benefits, loss of other accoutrements of employment, humiliation, outrage and indignation, all of which are continuing in nature.

WHEREFORE, for all of the above reasons, Plaintiff respectfully requests that this Court grant him judgment in whatever amount the trier of fact deems just in excess of $10,000 along other such relief this Court deems is just and equitable in the premises.

## COUNT IV -- DISCRIMINATION

35. Plaintiff hereby incorporates paragraphs 1 through 34 of his Complaint as if set for with full effect.

36. In engaging in the conduct described above, including the failure to accommodate his handicap, Defendant discriminated against Plaintiff based on his age and his disability, said discrimination ultimately resulting in his constructive discharge in October of 1993.

37. As a direct and proximate result of the Defendant's discriminatory practices, Plaintiff has suffered damages such as but not limited to loss of income, loss of benefits, loss of other accoutrements of employment, humiliation, outrage and indignation, all of which are continuing in nature.

8

WHEREFORE, for all the above reasons, Plaintiff respectfully requests that this Court grant him judgment in whatever amount the trier of fact deems just in excess of $10,000 along other such relief this Court deems is just and equitable in the premises.

Respectfully submitted:

GREEN & GREEN
Attorneys for Plaintiff
by:  Carrick D. Craig (P39274)

dated:  June 28, 1995

9

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF LIVINGSTON

LARRY YOUNG

     Plaintiff,

v.

GREEN OAK TOWNSHIP, a
 Michigan Municipal Corporation,

     Defendant.

_____/

95- 14387 -NO

Hon:

GREEN & GREEN
 Philip Green (P14316)
 Christine A. Green (P38413)
 Carrick D. Craig (P39274)
475 Market Place, Ste. D
Ann Arbor, MI 48108
(313) 665-4036

_____/

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues.

Respectfully submitted:

GREEN & GREEN
Attorneys for Plaintiff
by:  Carrick D. Craig (P39274)

dated:  June 28, 1995

FILED
LIVINGSTON COUNTY CLERK
95 JUL -3 AM 11:46